

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0796-10

**DANIEL RAY MORRIS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### EASTLAND COUNTY

KELLER, P.J., delivered the opinion of the Court in which JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined. MEYERS, J., filed a dissenting opinion in which PRICE and WOMACK, JJ., joined. PRICE, J., filed a dissenting opinion in which MEYERS, and WOMACK, JJ., joined.

We granted review to determine whether the "grooming" of children for sexual molestation

is a legitimate subject of expert testimony. We hold that it is.

### I. BACKGROUND

### A. Appellant's Conduct toward the Victim

When the victim in this case was eleven years old, his mother began dating appellant.

Appellant and the victim would go to the park, rollerblade, and ride mountain bikes. They would

discuss sexual matters, including sex and masturbation. Appellant told the victim that this was "guy talk" and not to mention it to his mother. Later, appellant gave the victim back rubs, and these back rubs continued after appellant married the victim's mother.

Once, after seeing a movie, appellant asked the victim if he had masturbated yet. Appellant was persistent in this questioning until the victim gave him an answer. At some point, the victim got a full-sized bed, and appellant would tuck him into bed. At this time, he would talk to the victim about masturbation and sex and would rub the victim's back. While rubbing the victim's back, appellant was wearing only briefs. And sometimes appellant would take those off, and take the victim's underwear off, so they could have skin-to-skin contact. Appellant would also rub the victim's buttocks and sometimes rub his chest and thighs. Occasionally, appellant's hands would brush against the victim's testicles. At first, appellant stayed in the victim's room for thirty minutes to an hour, but eventually he stayed the entire night.

A couple of times, appellant measured the victim's penis. By the time the victim was fifteen years old, appellant wanted to cuddle with the victim every night for the entire night. During that time, appellant would take him on trips to haul hay. On the way back from two of those trips, appellant stopped at an adult bookstore to buy adult magazines or a pornographic video for the victim. One time, appellant also showed the victim how to find free pornography on the internet. On the trips, appellant touched the victim's penis through the victim's clothing two or three times. Each time, it was part of a "game."

At night, appellant would also play a "game" where the victim would have to guess whether it was appellant's finger or penis that was poking the victim's back. Appellant also touched the victim's penis a number of times under the victim's underwear for four to five seconds.

## B. Rule 702 Hearing

The State sought to offer the testimony of Special Texas Ranger David Hullum regarding the conduct of child molesters. Ranger Hullum had been in law enforcement for over twenty-nine years and had over 3500 hours of law-enforcement training. He had been a Texas Ranger in Eastland for approximately nine years and had played a major role in the investigation of several hundred sexual offenses, approximately seventy-five of which involved child victims. In these cases, Ranger Hullum interviewed both child victims and suspects. Ranger Hullum was also a member of a "cold case" committee that met quarterly to discuss unsolved murders and sexual offenses.

In response to questioning from the State, Ranger Hullum affirmed that he had been recognized as an expert in the trial court and other courts in connection with sexual offenses against children. He explained that he had experience in his investigations with determining the existence of grooming techniques. He testified that he had specialized experience and training in the techniques or ploys used by child molesters against children.

On cross-examination, Ranger Hullum acknowledged that he had no education in psychology or psychiatry. When asked about his specialized training, Ranger Hullum responded that he had quite a few classroom hours at the Department of Public Safety (DPS). The teachers included DPS employees, officers from other law-enforcement agencies, and employees of Child Protective Services. At least one of the teachers was a psychiatrist. However, Ranger Hullum could not name any of the individual instructors or where they received their education or training. When asked by the defense whether he had ever read a book or article on "grooming," Ranger Hullum responded, "Yes," but he could not recite any authors or titles.

On redirect examination, Ranger Hullum responded that he had testified numerous times in

court regarding grooming techniques.

The defense objected that the State had not demonstrated that Ranger Hullum was qualified to testify as an expert. The defense also objected that "there's no testimony before the court from Ranger Hullum that the theory under which he's going to express these opinions are accepted by the scientific community or the psychiatric community or the psychological community." The trial court responded that he had "previously found that Ranger Hullum is an expert in these areas" due to his "knowledge, skill, his experience, training and his education." Defense counsel further argued, "[T]here's been no finding as to reliability, and that it's an accepted theory by the scientific community, and its relevance." The trial court responded that the evidence was highly relevant and overruled the defense objections. After the defense sought further clarification that the trial court's ruling embraced "reliability," the trial court responded, "Your objections are overruled."

### C. Ranger Hullum's Testimony

Before the jury, Ranger Hullum described "grooming" as "an attempt by the offender to get the victim compliant with what he wants to happen." He explained that grooming typically occurs over an extended time period and involves spending intimate time alone with the child. Ranger Hullum further explained that grooming involves an element of trust, created by an emotional tie between the offender and the victim. Ranger Hullum cited specific examples of grooming such as supplying the child with alcohol or pornography, engaging in sexual banter, giving or withholding gifts, or telling the child about the adult's own prior sexual experiences. The prosecutor framed a hypothetical that involved a gradual increase in the amount of time an adult stayed each night in a child's bedroom, until the adult spent the entire night there, and asked if that would be an example

of grooming.[1] Ranger Hullum responded that it would be a "perfect example."

Ranger Hullum elaborated that grooming was really no different from behavior that occurs in high school dating. He explained that a boy on a date might put his "arm around the young lady to see how she would react to that, if she would object." Likewise, Ranger Hullum explained, an adult offender "wants to see how that child's going to react to that first touching," with the object of the offender's behavior being to "desensitize" the child. When asked about whether back rubs can sometimes be grooming, Ranger Hullum responded affirmatively, saying, "It's also a way to desensitize the child of having those hands placed on that back. And you start off in a neutral area where the child doesn't believe that there is anything wrong with this touching, and then you progress to other areas, more sensitive areas."

Further, he explained that grooming can involve joking about or minimizing the offender's conduct—which communicates to the child, "Hey, look, there's nothing serious happening here." When asked whether it would be "unusual for a defendant to fool the victim with games . . . to obtain sexual contact," Ranger Hullum replied that what is being described is "just disguised foreplay," which can take the form of a game or horseplay.

When asked whether pornography had anything to do with grooming, Ranger Hullum said, "It's critical in this aspect. Pornography overstimulates – sexually overstimulates the child." He also explained that it was fairly common for pornography to be involved in sex offenses against children.

---

[1] The prosecutor asked, "And hypothetically, if you were to hear of a case where a potential predator was going into a child's bedroom and spending ten to fifteen minutes with the child for a period of time, and then moving onto an hour to two hours, with the child, and then into the wee hours of the morning in the child's bedroom, and then finally into staying overnight with the child; is that an example of grooming?" Ranger Hullum also was asked whether appellant's visits to the victim's "bedroom and the progressive nature to overnight stays" had any significance, and he responded, "Yes, I think it goes back to the amount of time."

## D. Court of Appeals

Appellant was convicted of indecency with a child. On appeal, appellant contended that the trial court erred in allowing Ranger Hullum to testify as an expert about "methodology"[2] and "grooming." Appellant complained that the State had presented no evidence that the theory had been accepted by the scientific, psychiatric, or psychological community. He noted that Ranger Hullum could not recall the title or author of a single book or article he had read and could not identify the lone psychiatrist involved in his training. He also pointed out that Ranger Hullum was not himself a psychiatrist or psychologist.

Appellant then cited *Nenno v. State*[3] for the test for determining the admissibility of evidence from fields of expertise outside the hard sciences. Relying upon *Perez v. State*,[4] appellant claimed that the State had failed to satisfy the first *Nenno* prong, "whether the field of expertise is a legitimate one,"[5] because the record is silent concerning the existence of literature that supports or reflects the underlying theory. Appellant stated that he could find no reported Texas case holding that an expert may testify as to "grooming." Finally, appellant asserted that experience alone cannot establish reliability, or else "twenty years of reading tea leaves would make fortune-telling a legitimate field of expertise."

---

[2] On discretionary review, appellant does not specifically advance his complaint about Ranger Hullum's testimony concerning the "methodology" of child molesters. We address the complaint about "methodology" to the extent it is encompassed by his current complaint about "grooming."

[3] 970 S.W.2d 549 (Tex. Crim. App. 1998).

[4] 25 S.W.3d 830, 837 (Tex. App.–Houston [1st Dist.] 2000, no pet.).

[5] *Nenno*, 970 S.W.2d at 561.

The court of appeals rejected these claims.[6] Characterizing Ranger Hullum's testimony as involving a "soft science," the appellate court employed the *Nenno* test.[7] It found that Ranger Hullum's qualifications "were not only based upon the writings or experiences of others but were also based upon his own considerable experience."[8] The court noted Ranger Hullum's 3500 hours of law-enforcement training and the numerous cases that he investigated that related to sexual offenses against children.[9] The court of appeals found Ranger Hullum's training, background, and experience to differ significantly from the witness that was found insufficiently qualified in *Perez*.[10]

## II. ANALYSIS

### A. Appellant's Argument

In his ground for review, appellant contends: "The court of appeals erred in holding that testimony about 'grooming' was admissible where there was no showing that the study of 'grooming' was a legitimate field of expertise." In support of this ground, appellant argues that the State had "the burden to introduce some sort of research or other evidence to support the expert's opinion." He equates the situation here with what occurred in *Coble v. State*,[11] where the

---

[6] *Morris v. State*, 2010 WL 2224651, 9-10 (Tex. App.–Eastland June 3) (not designated for publication).

[7] *Morris*, 2010 WL 2224651, at 9.

[8] *Id.* at 10.

[9] *Id.* The court of appeals appears to have misread the record in this regard. The record reflects his major participation in several hundred cases involving sexual offenses, with approximately one-third or seventy-five of those being sexual offenses committed against children. *See id.* This discrepancy does not affect our analysis.

[10] *Morris*, 2010 WL 2224651, at 10.

[11] 330 S.W.3d 253 (Tex. Crim. App. 2010).

psychiatrist, Dr. Coons, "cited no books, articles, journals, or even other forensic psychiatrists" for the validity of his methodology.[12] Appellant complains that Ranger Hullum's "methodology appears to have been nothing more than his own observations as a law enforcement officer, without testing from *any* source as to the validity of his conclusions." Appellant further states that there is nothing "to show that anyone has undertaken a scientific study of 'grooming.'" "Perhaps offenders who prey on children do act as Ranger Hullum testified," appellant says, "but there is only his word for it." Appellant contends that Ranger Hullum's testimony should not have been admitted absent empirical data in the record showing, "for example, how many men who give back rubs to their children turn out to be 'grooming' them?" Appellant argues that the court of appeals erroneously "equate[d] the experience of an expert witness with the reliability of his testimony."

## B. Rule 702 Framework

Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or

---

[12] *See id.* at 277. In *Coble*, the defendant did not "quarrel with the first prong—the legitimacy of the field of forensic psychiatry, nor, apparently, with the second prong— [that] Dr. Coon's testimony is within the scope of forensic psychiatry, but he contend[ed] that Dr. Coon's testimony did not properly rely upon the accepted principles of forensic psychiatry, at least as far as those principles apply to the prediction of long-term future dangerousness." *Id.* at 274. Our conclusion in *Coble* concerned the third prong, that "the prosecution did not satisfy its burden of showing the scientific reliability of Dr. Coon's methodology for predicting future dangerousness." *Id.* at 279. In contrast, appellant's petition challenges whether "the study of 'grooming' was a legitimate field of expertise," which he argues is an attack on the first prong (the legitimacy of the field of study), and which we later consider as an attack on the second prong (whether the subject matter is within the scope of the field). *See* this opinion, *post*. Because it concerned the third prong only, *Coble* is of limited assistance to our inquiry today.

otherwise."[13] The rule was designed "to relax the traditional barriers to opinion testimony."[14]

When the subject of an expert's testimony is "scientific knowledge," then the basis of that testimony must be grounded in the accepted methods and procedures of science.[15] For expert testimony based upon "hard" science, we employ the *Kelly*[16] test for reliability: (1) the underlying scientific theory must be valid, (2) the technique applying the theory must be valid, and (3) the technique must have been properly applied on the occasion in question.[17] Although the inquiry is somewhat more flexible for soft sciences than for Newtonian and medical science, "'soft' science does not mean soft standards."[18] But expert testimony does not have to be based upon science at all; by its terms, Rule 702, by applying to "technical or other specialized knowledge," permits even nonscientific expert testimony.[19]

Recognizing the flexible nature of a Rule 702 inquiry, in *Nenno*, we set forth a framework for evaluating the reliability of expert testimony in fields of study outside the hard sciences.[20] This framework consisted of three questions: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether

---

[13] TEX. R. EVID. 702.

[14] *Nenno*, 970 S.W.2d at 561.

[15] *Coble*, 330 S.W.3d at 272.

[16] *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992).

[17] *Id.* at 573.

[18] *Coble*, 330 S.W.3d at 274.

[19] *See* R. 702; *see also Nenno*, 970 S.W.2d at 560-61.

[20] *Nenno*, 970 S.W.2d at 561.

the expert's testimony properly relies upon and/or utilizes the principles involved in the field.[21] We explained that this was simply a translation of the *Kelly* test appropriately tailored to areas outside of hard science.[22] In employing the *Nenno* framework, we also explicitly refrained from developing rigid distinctions between "hard" science, "soft" sciences, and nonscientific testimony because we recognized that the distinction between various types of testimony may often be blurred."[23]

In addressing "hard" science under the *Kelly* test, we have observed that trial courts do not necessarily have to relitigate what is valid science in every case: "It is only at the dawn of judicial consideration of a particular type of forensic scientific evidence that trial courts must conduct full-blown 'gatekeeping' hearings under *Kelly*."[24] "Trial courts are not required to re-invent the scientific wheel in every trial."[25] This observation with respect to the hard sciences logically applies to all types of expert testimony.[26] Whether a field of study is legitimate and whether the subject matter is within the scope of that field are questions that are capable of being resolved as a general matter, so that courts can take judicial notice of the reliability (or unreliability) of the type of evidence at

---

[21] *Id.*

[22] *Id.*

[23] *Id.* at 560-61.

[24] *Hernandez v. State*, 116 S.W.3d 26, 29 (Tex. Crim. App. 2003).

[25] *Id.*

[26] But not every observation with respect to the hard sciences applies to other types of expert testimony. *See Nenno*, 970 S.W.2d at 561 (observing that "hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, may often be inappropriate for testing the reliability of fields of expertise outside the hard sciences").

issue.[27]   Taking judicial notice of reliability usually requires that a trial court somewhere has

examined and assessed the reliability of the evidence.[28]

## C. Legitimate Field of Expertise?

---

[27]  *See Hernandez*, 116 S.W.3d at 29 ("Once a scientific principle is generally accepted in the pertinent professional community and has been accepted in a sufficient number of trial courts through adversarial *Daubert*/*Kelly* hearings, subsequent courts may take judicial notice of the scientific validity of that scientific theory based upon the process, materials, and evidence produced in those prior hearings.")

[28]  *Id.*; *but see id.* at 34-35, 37 (Keller, P.J., concurring) (matters of common knowledge can be recognized without a prior determination of reliability and a "less exacting inquiry" may be required if "a large number of jurisdictions recognize the validity or reliability of a scientific theory or technique").

In his dissent, Judge Price claims that we run afoul of the statement in *Hernandez* that "judicial notice on appeal cannot serve as the sole source of support for a bare trial court record concerning scientific reliability." Dissent by Price, J. at 8-9 (quoting *Hernandez*, 116 S.W.3d at 31-32). At oral argument, appellant's counsel also relied upon this portion of *Hernandez* to argue that the federal cases cited by the State were irrelevant because they had not been presented to the trial court. But *Hernandez* was speaking specifically about *scientific* evidence. In general, judges are not scientists and lack expertise to assess the reliability of scientific principles on their own. *See GE v. Joiner*, 522 U.S. 136, 148 (1997) (Breyer, J., concurring) ("judges are not scientists and do not have the scientific training that can facilitate the making of such decisions").

But, first, as Judges Meyers, Womack, and Keasler suggested in questioning at oral argument, the evidence at issue in this case was not scientific; rather, it was testimony based upon experience. Such evidence is akin to the beekeeper example referred to in Judge Cochran's questioning: a beekeeper may testify from experience that bumblebees always fly into the wind, because, even though he is not a scientist with an understanding of aerodynamics, he has seen a lot more bumblebees than the jurors have. *See Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 724-25 (Tex. 1998) (quoting from *Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994)). And the experience-based testimony at issue in the present case involved a topic with which courts are familiar: behaviors engaged in by criminals. Courts are far better qualified to assess the reliability of this type of evidence than scientific evidence. We will not extend *Hernandez*'s rule with respect to scientific evidence to the dissimilar situation before us.

And second, contrary to Judge Price's belief, this case does not present a "bare trial court record" concerning the reliability of grooming. "Reliability" in this context depends upon the accuracy of the notion that grooming is a common phenomenon. Ranger Hullum's testimony concerning his experience regarding grooming behaviors is some evidence that grooming behaviors are common.

We believe that appellant's claim that "grooming" has not been shown to be a legitimate field of expertise misapprehends where the concept of "grooming" fits into the *Nenno* framework. In *Nenno* we recognized the experience-based study of "the behavior of offenders who sexually victimize children" as a legitimate field of expertise.[29] "Grooming" is a subject matter that may fall within the scope of that field.

We also disagree with the suggestion that a field of expertise must incorporate a scientific study or empirical data. In *Nenno*, we found expert testimony from Kenneth Lanning, a Supervisory Special Agent in the FBI's behaviorial science unit, to be sufficiently reliable based upon his own research, which included personal interviews with inmates convicted of child sex offenses, examining the inmates' psychological records, and examining the facts of the offenses involved.[30] Other generally accepted areas of expert testimony may involve the gaining of specialized knowledge through experience or personal research: the behavior of gangs,[31] the behavior of drug dealers,[32] or

---

[29] *See Nenno*, 970 S.W.2d at 562.

[30] *Id.*

[31] *See Ortiz v. State*, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002) (Sergeant with El Paso Sheriff's Department testified as an expert on prison gangs); *United States v. Padilla*, 387 F.3d 1087, 1094 (9th Cir. 2004) (expert testimony was reliable based upon "Detective Eagleson's extensive experience with Los Angeles street gangs, and the Cuatro Flats gang in particular").

[32] *See Ex parte Nailor*, 149 S.W.3d 125, 134 n. 41 (Tex. Crim. App. 2004) (citing, with approval, *Williams v. State*, 826 S.W.2d 783 (Tex. App.–Houston [14th Dist.] 1992, pet. ref'd), for the proposition that a police officer could testify, as either a lay witness or an expert, that he interpreted the defendant's actions to be a drug transaction); *Williams*, 826 S.W.2d at 785 (officer had witnessed hundreds of narcotics transactions and could recognize certain behavior, which might appear normal to an inexperienced person, to be a narcotics transaction); *United States v. Winbush*, 580 F.3d 503, (7th Cir. 2009) (court had long recognized, along with others, that expert testimony could be helpful in explaining how seemingly innocent activity may be significant in a drug transaction; citing among other cases, *United States v. Foster*, 939 F.2d 445, 451 & n.6 (7th Cir. 1991) (collecting cases)).

whether injuries could have been made by a particular weapon.[33]

### D. Subject Matter within the Scope of the Field?

Because we have already held that the behavior of people who sexually victimize children is, under *Nenno's* first prong, a legitimate field of expertise, we will construe appellant's claim as an attack under *Nenno's* second prong. We address, then, whether the subject matter of "grooming" is within the scope of the field of studying the behavior of people who sexually victimize children. In answering that question, we must ascertain whether "grooming" has been established as a phenomenon and what kind of expertise is required to recognize that phenomenon.

Although the record in this case may be sparse, an examination of court decisions establishes rather clearly that we are not at the "dawn of judicial consideration" for this type of testimony. Cases that refer to "grooming" in one way or another are legion. The number of published cases is significant, but once one considers unpublished cases as well, the number is overwhelming. We cite the unpublished cases, not as authority,[34] but simply as an indication that the concept of grooming has gained widespread recognition.

References to the concept of grooming can be found in at least twenty-nine Texas court-of-appeals cases from eleven courts of appeals. In eleven of those cases, from six courts of appeals, the appellate courts upheld the admission of expert testimony on grooming against various challenges,

---

[33] *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010) (police detective's experience as a police officer and homicide detective gave him sufficient expertise to testify whether wounds suffered by a cat could have been inflicted by the same knife that killed the victim).

[34] *See* Tex. R. App. P. 47.7 ("Opinions and memorandum opinions not designated for publication by the court of appeals under these or prior rules have no precedential value but may be cited with the notation, "(not designated for publication).").

including some based upon Rule 702.[35] In another case, a court of appeals found one witness to be unqualified and held that another witness improperly addressed the facts of the case, but the court nevertheless recognized testimony about what constitutes grooming to be legitimate.[36] At least one court relied upon expert testimony on grooming in a sufficiency-of-the-evidence analysis,[37] and numerous other Texas court-of-appeals cases have referred to expert testimony on grooming.[38] A

---

[35] *Bryant v. State*, 340 S.W.3d 1, 7-10 (Tex. App.–Houston [1st Dist] 2010, pet. dism'd) (rejecting claim that expert was not qualified); *Weatherly v. State*, 283 S.W.3d 481, 491-93 (Tex. App.–Beaumont 2008, pet. ref'd) (rejecting ineffective-assistance-of-counsel claim because the defendant failed to demonstrate that an objection would have resulted in excluding the evidence, citing *Nenno*); *Teczar v. State*, 2011 Tex. App. LEXIS 2919, 24-30 (Tex. App.–Eastland April 15, no pet.) (not designated for publication) (upholding admission under R. 702); *Cook v. State*, 2010 Tex. App. LEXIS 8095, 4, 15-16, 20-21 (Tex. App.–Beaumont October 6, pet. ref'd) (not designated for publication) (rejecting R. 403 claim; holding that evidence was not an impermissible comment on credibility); *Morris*, *supra* (present case); *Van Houten v. State*, 2009 Tex. App. LEXIS 1301, 10-12, 14-15 (Tex. App.–Eastland February 26, pet. ref'd) (not designated for publication) (upholding admission of testimony based upon expert's training, experience, and research); *Blanchard v. State*, 2007 Tex. App. LEXIS 8403, 6-8 (Tex. App.–Texarkana September 27, pet. ref'd) (not designated for publication) (rejecting claim that testimony was redundant of what is knowledge common to jurors); *Davenport v. State*, 2006 Tex. App. LEXIS 5166, 8-9, 13-15 (Tex. App.–Fort Worth June 15, pet. ref'd) (not designated for publication) (upholding admission under R. 702, citing *Nenno*); *Comeaux v. State*, 2005 Tex. App. LEXIS 3748, 7, 23-26 (Tex. App.–Houston [14th Dist.] May 17, pet. ref'd) (not designated for publication) (upholding admission of evidence as "fit" under R. 702); *Reid v. State*, 2005 Tex. App. LEXIS 3072, 3 (Tex. App.–Fort Worth April 21, pet. ref'd) (not designated for publication) (upholding admission under R. 702, citing *Nenno*); *Perez v. State*, 2005 Tex. App. LEXIS 2408, 6, 10 (Tex. App.–Houston [1st Dist] March 31, pet. ref'd) (not designated for publication) (upholding admission under R. 702 against claim that the evidence was not useful to the jury).

[36] *Kelly v. State*, 321 S.W.3d 583, 600-02 (Tex. App.–Houston [14th Dist.] 2010, no pet.).

[37] *Wagner v. State*, 2010 Tex. App. LEXIS 4087, 4-5, 9-10 (Tex. App.–El Paso May 28, pet. ref'd) (not designated for publication).

[38] *In re Commitment of Eeds*, 254 S.W.3d 555, 558 n.5 (Tex. App.-Beaumont 2008, no pet.); *Mulvihill v. State*, 177 S.W.3d 409, 412 (Tex. App.–Houston [1st Dist] 2005, pet. ref'd); *Hernandez v. State*, 973 S.W.2d 787, 790 (Tex. App.–Austin 1998, pet. ref'd); *Layer v. State*, 2011 Tex. App. LEXIS 2648, 18-19 (Tex. App.–Fort Worth April 11, no pet.) (not designated for publication); *Sylvia v. Tex. Dep't of Family & Protective Servs.*, 2010 Tex. App. LEXIS 2752, 22 (Tex. App.–Austin

review of all of these cases makes clear that "grooming" is not something that Ranger Hullum made up; the cases reveal a number of witnesses, including those in law enforcement, speaking about the matter.[39] Expert testimony about grooming has also been discussed in at least a few decisions from

April 15, no pet.) (not designated for publication); *Barrera v. State*, 2010 Tex. App. LEXIS 401, 6 (Tex. App.–Dallas January 21, no pet.) (not designated for publication); *Orange v. State*, 2009 Tex. App. LEXIS 8934, 5-6, 40 (Tex. App.–Texarkana November 19, pet. ref'd) (not designated for publication); *Mitchell v. State*, 2008 Tex. App. LEXIS 8594, 2-3, 5 (Tex. App.–Austin November 14, pet. ref'd), *reference also in later proceeding in*, *Mitchell v. Thaler*, 2011 U.S. Dist. LEXIS 14189, 12-16 (W.D. Tex February 14) (opinions not designated for publication); *Chandler v. State*, 2008 Tex. App. LEXIS 178, 10 (Tex. App.–Houston [1ˢᵗ Dist.] January 10, pet. ref'd) (not designated for publication); *Petronella v. State*, 2007 Tex. App. LEXIS 3198, 5-7 (Tex. App.–Eastland April 26, pet. ref'd) (not designated for publication); *Hale v. Hale*, 2006 Tex. App. LEXIS 747, 6 (Tex. App.–San Antonio January 25, pet. denied) (not designated for publication); *Zimmer v. State*, 2004 Tex. App. LEXIS 6180, 6-7 (Tex. App.–Dallas July 14, no pet.) (not designated for publication); *Carey v. State*, 2004 Tex. App. LEXIS 3188, 4 (Tex. App.–Texarkana April 8, no pet.), *reference also in later proceeding in*, *Carey v. Quarterman*, 2008 U.S. Dist. LEXIS 121789, 14-15 (N.D., Tex., June 13), *adopted by*, 2008 U.S. Dist. LEXIS 66049 (N.D. Tex. August 24) (opinions not designated for publication); *Cannon v. State*, 2004 Tex. App. LEXIS 1105, 1-2 (Tex. App.–Beaumont January 2, pet. ref'd) (not designated for publication); *Mendiola v. State*, 2003 Tex. App. LEXIS 9043, 11-12 (Tex. App.–Houston [1ˢᵗ Dist.] October 23, no pet.) (not designated for publication); *Carte v. State*, 1999 Tex. App. LEXIS 411, 3 (Tex. App.–Amarillo January 25, pet. ref'd) (not designated for publication).

[39] *See Bryant*, 340 S.W.3d at 5 (Tyler police officer, assigned to Crimes Against Children Unit, who was lead investigator on the case); *Kelly*, 321 S.W.3d at 602 (Dr. Gayle Burress); *Weatherly*, 283 S.W.3d at 491 (Detective Jeff Wilmore); *Mulvihill*, 177 S.W.3d at 412 (Dene Edminston, counselor, New Horizons Center in Baytown); *Teczar*, 2011 Tex. App. LEXIS 2919, 24-30 (Ranger Hullum); *Layer*, 2011 Tex. App. LEXIS 2648, 18-19 (Dr. William Lee Carter); *Cook*, 2010 Tex. App. LEXIS 8095, 4 (Dr. Roger Saunders); *Wagner*, 2010 Tex. App. LEXIS 4087, 4-5 (Ellen Elliston, Director of Victim Intervention and Rape Crisis Center at Parkland Hospital); *Sylvia*, 2010 Tex. App. LEXIS 2752, 22 (Dr. Michael Campbell); *Barrera*, 2010 Tex. App. LEXIS 401, 6 (Cindy Alexander, clinical director Dallas Children's Advocacy Center); *Orange*, 2009 Tex. App. LEXIS 8934, 5-6 (Bunny Terrell, forensic interviewer for Children's Advocacy Center in Longview); *Van Houten*, 2009 Tex. App. LEXIS 1301, 10-12, 14-15 (Andra K. Chamberlin, program director and lead forensic interviewer at Midland Rape Crisis and Children's Advocacy Center); *Mitchell*, 2008 Tex. App. LEXIS 8594, 2-3, 5 (Emily Orozco, licensed professional counselor); *Chandler*, 2008 Tex. App. LEXIS 178, 10 (Dr. Lawrence Thompson, Director of Therapy and Psychological Services at the Children's Assessment Center); *Blanchard*, 2007 Tex. App. LEXIS 8403, 6-8 (Psychologist Ed Waggoner); *Petronella*, 2007 Tex. App. LEXIS 3198, 5-7 (David Hernandez, a therapist with the Midland Rape Crisis Center); *Davenport*, 2006 Tex. App. LEXIS 5166, 8-9, 13-15

federal district courts in Texas.[40]  And one federal district-court decision even involved a Texas

venireman who explained the concept of grooming during voir dire.[41]

But recognition of the concept of grooming extends far beyond Texas.  The concept has

become well known in the federal system.  The Fifth and Tenth Circuits have expressly held that

expert testimony on "grooming" is admissible under Federal Rule of Evidence 702.[42]  Earlier cases

from the Third  and Seventh Circuits have held such evidence to be admissible under Rule 702, but

have referred to this kind of evidence as "seduction" rather than "grooming."[43]  Similarly, an earlier

---

(Mary Jo Guitierrez, probation officer); *Hale*, 2006 Tex. App. LEXIS 747, 6 (Shannon Peck, therapist); *Comeaux*, 2005 Tex. App. LEXIS 3748, 7 (Dr. Judy Rambur, clinical psychologist); *Reid*, 2005 Tex. App. LEXIS 3072, 3 (Ron Perrett); *Zimmer*, 2004 Tex. App. LEXIS 6180, 6-7 (Steven Bell, supervisor Kaufman County Probation Services); *Cannon*, 2004 Tex. App. LEXIS 1105, 1-2 (Victor Love, director Youth and Family Services for Montgomery County Youth Services); *Mendiola*, 2003 Tex. App. LEXIS 9043, 11-12 (Cynthia Moore, clinical psychologist).

[40]  *Berg v. Thaler*, 2011 U.S. Dist. LEXIS 30761, 10 (S.D., Tex., Houston Div. March 23) (not designated for publication); *Coy v. Quarterman*, 2007 U.S. Dist. LEXIS 42801, 32-33 (S.D. Tex, Houston Div. June 13) (not designated for publication); *Arrington v. Cockrell*, 2001 U.S. Dist. LEXIS 19827, 33 (N.D. Tex., Fort Worth Div. November 6) (not designated for publication).

[41]  *McClellan v. Cockrell*, 2003 U.S. Dist. LEXIS 17385, 29 (N.D., Dallas Div. Tex September 3), *adopted by*, 2003 U.S. Dist. LEXIS 17372 (N.D. Tex., Dallas Div. Sept. 29) (opinions not designated for publication) (When asked by prosecutor about "grooming," the venireman explained: "It's when an adult will befriend a child and start taking them places and doing things just like a buddy system, and it progresses from there to petting on the head to petting them in other places." Defendant did not show that prosecutor's question was improper).

[42]  *United States v. Hitt*, 473 F.3d 146, 152 & n.4, 158 (5th Cir. 2006); *United States v. Batton*, 602 F.3d 1191, 1198, 1198 n.3, 1200-02 (10th Cir. 2010).

[43]  *United States v. Hayward*, 359 F.3d 631, 636 (3rd Cir. 2004) (discussing testimony by Kenneth Lanning regarding the "seduction process"); *United States v. Romero*, 189 F.3d 576, 583-85 (7th Cir. 1999) (discussing Lanning's testimony about "sophisticated psychological techniques" child molesters use to "'seduce' their victims").  *See also Hitt*, 473 F.3d at 158 (citing *Romero* and *Hayward* in connection with admissibility of "grooming" evidence); *Batton*, 602 F.2d at 1202 (discussing *Romero* and *Hitt* and mentioning *Hitt*'s citation to *Hayward*); *Jones v. United States*, 990 A.2d 970, 978 (D.C. App. 2010) (Kenneth Lanning referred to seduction techniques as "grooming").

case from the DC Circuit upheld the admission of such "seduction" evidence against a challenge under Federal Rule of Evidence 403.[44] The Second and Ninth Circuits have expressly recognized the concept of "grooming,"[45] and the Seventh Circuit has done so in later cases.[46] Opinions from the Fourth, Sixth, and Eighth Circuits contain definitions of, or other references to, grooming.[47] The Court of Appeals for the Armed Forces has upheld the admission of expert testimony about grooming to show the psychological impact of the defendant's offenses on the victim.[48] And the District of Columbia Court of Appeals has upheld the admission of expert testimony about grooming under its standard for the admissibility of expert testimony.[49]

A number of federal district courts, in published and unpublished opinions or orders, have also discussed or referred to "grooming." A few of these criticized the concept of grooming or

---

[44] *United States v. Long*, 328 F.3d 655, 665-68 (D.C. Cir. 2003) (Lanning's testimony about the "seduction process").

[45] *United States v. Brand*, 467 F.3d 179, 203 (2nd Cir. 2006); *United States v. Goetzke*, 494 F.3d 1231, 1235 (9th Cir. 2007); *United States v. Johnson*, 132 F.3d 1279, 1283 & n.2 (9th Cir. 1997).

[46] *United States v. Chambers*, 642 F.3d 588, 593-94 (7th Cir. 2011); *United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008). The Third Circuit has also used the term "grooming." *Coley v. County of Essex*, 2011 U.S. App. LEXIS 10690, 7-8 (3rd Cir. May 26) (not designated for publication) (referring to "grooming" process in which abuse escalates over time).

[47] *United States v. Fancher*, 513 F.3d 424, 431 (4th Cir. 2008) (finding by trial judge that defendant "grooms or grows" his victims and could not stop grooming victims even from jail); *United States v. Shafer*, 573 F.3d 267, 271 (6th Cir. 2009) (reference by trial judge to "grooming conduct"); *United States v. Young*, 613 F.3d 735, 739 & n.3 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 962 (2011) (reference to Internet Crimes Against Children Task Force's definition of grooming); *United States v. Mikowski*, 332 Fed. Appx. 250, 251 n.2 (6th Cir. 2009) (not designated for publication) (setting out a definition of grooming); *United States v. Blum*, 404 Fed. Appx. 89, 92 & n.3 (8th Cir. 2010) (not designated for publication) (setting forth a definition of grooming found in the record).

[48] *United States v. Patterson*, 54 M.J. 74, 75, 78 (C.A.A.F. 2000).

[49] *Jones*, 990 A.2d at 978.

indicated that expert testimony about it was not admissible,[50] others expressly determined that such evidence was admissible,[51] and others expressly recognized the concept of "grooming" but suggested that the concept was not applicable under the circumstances presented.[52] One court, in recognizing the concept, cited Wikipedia.[53] Other federal district courts discussed expert testimony about grooming,[54] cited a claim of grooming made by a treatment program for sex offenders[55] or by a state

[50] *United States v. Raymond*, 700 F. Supp. 2d 142, *passim*, 151, 156 (D. Me 2010) (suggesting that expert "grooming" testimony was not admissible and not helpful, but reserving question on whether it could be admitted in rebuttal); *United States v. Burns*, 2009 U.S. Dist. LEXIS 100642, 12-15 (N.D. Ill October 27) (not designated for publication) (disparaging comments about "grooming theory"); *United States v. Schneider*, 83 Fed. R. Evid. Serv. (Callaghan) 820, 2010 U.S. Dist. LEXIS 99662, 8, 20 (E.D. Pa September 21) (not designated for publication) (witness found not qualified to testify about grooming and suggesting expert "grooming" testimony not helpful).

[51] *Light v. Martel*, 2009 U.S. Dist. LEXIS 115715, 8-9, 17-26 (N.D. Cal November 30) (not designated for publication); *Simonton v. Evans*, 2009 U.S. Dist. LEXIS 13599, 15-16 (S.D. Cal February 23) (not designated for publication).

[52] *Am. Booksellers Found. v. Dean*, 202 F. Supp. 2d 300, 316-17 (D. Vt 2002), *aff'd as modified on other grounds*, 342 F.3d 96 (2nd Cir. 2003) (State had compelling interest in protecting minors from grooming practices, but statute did not limit its scope to grooming practices and was unconstitutional); *Ordemann v. Livingston*, 2008 U.S. Dist. LEXIS 39409, 7 (E.D. La May 14) (not designated for publication) (citing *Hitt*, but holding that "grooming" was not itself a civilly actionable wrong); *United States v. Thomas*, 2006 U.S. Dist. LEXIS 3266, 19, 21, 87-88 (D. Md January 13) (not designated for publication) (court "fully appreciates the significance" of grooming behavior, but such behavior was not shown here).

[53] *Doe v. Liberatore*, 478 F. Supp. 2d 742, 749-50, 761-63 (M.D. Pa. 2007).

[54] *Morris v. Suthers*, 246 F. Supp. 2d 1120, 1132 (D. Colo 2001); *Lopez v. Yates*, 2008 U.S. Dist. LEXIS 113464, 12, 37-47, 50-54 (C.D. Cal April 30), *adopted by*, 2008 U.S. Dist. LEXIS 49127 (C.D. Cal. June 12) (not designated for publication); *Roca v. Cain*, 2008 U.S. Dist. LEXIS 107554, 58-60 (E.D. La December 16), *adopted by*, 2009 U.S. Dist. LEXIS 9502 (E.D. La. Feb. 9) (not designated for publication); *Swiatkowski v. Berghuis*, 2009 U.S. Dist. LEXIS 131192, 25-28 (W.D. Mich July 13), *adopted by, certificate of appealability granted in part on other grounds*, 2011 U.S. Dist. LEXIS 72926 (W.D. Mich. July 7) (opinions not designated for publication); *United States v. Christy*, 2010 U.S. Dist. LEXIS 71300, 11-12 & n.5, 23-24 (D. N.M. April 28) (not designated for publication); *Thompson v. Parker*, 2010 U.S. Dist. LEXIS 63154, 18 (W.D. Okla April 30), *adopted by*, 2010 U.S. Dist. LEXIS 63124 (W.D. Okla. June 25), *appeal dism'd*, 406 Fed. Appx. 272 (10th Cir. 2010) (opinions not designated for publication); *United States v. Farris*, 2008

hospital,[56] referred to evidence of the defendant's extraneous conduct as admissible to show grooming,[57] or made their own determinations that grooming had occurred.[58]

Further, the concept of grooming has been discussed or at least referred to in opinions from state appellate courts in at least thirty-eight other states. A few of these opinions have specifically upheld the admission of expert testimony on the subject,[59] but many more have referred to the

U.S. Dist. LEXIS 36937, 12-13 (W.D. Pa May 1) (not designated for publication); *Vermeal v. Parker*, 2009 U.S. Dist. LEXIS 89830, 17-18 (E.D. Tenn. September 29) (not designated for publication).

[55] *Schnitzler v. Reisch*, 518 F. Supp. 2d 1098, 1101 (D. S.D. 2007).

[56] *Force v. Hunter*, 2009 U.S. Dist. LEXIS 68497, 6-7, 10 (C.D. Cal June 23, 2009), *adopted by*, 2009 U.S. Dist. LEXIS 68489 (C.D. Cal. July 29, 2009) (opinions not designated for publication).

[57] *Sullivan v. Schriro*, 2005 U.S. Dist. LEXIS 26339, 31 (D. Ariz August 15) (not designated for publication); *Kittle v. Vasbinder*, 2010 U.S. Dist. LEXIS 21788, 6-7 (E.D. Mich. March 10) (not designated for publication); *Clark v. Bock*, 2002 U.S. Dist. LEXIS 23577, 9-10 (E.D. Mich. October 28) (not designated for publication).

[58] *United States v. Wetmore*, 766 F. Supp. 2d 319, 321-22 (D. Mass. 2011); *United States v. Blake*, 2010 U.S. Dist. LEXIS 23014, 4-5, 16 (E.D. Cal February 24) (not designated for publication) (characterizing allegations that provided probable cause for a search warrant as "grooming"); *United States v. Hansel*, 2006 U.S. Dist. LEXIS 54725, 2 (N.D. Iowa August 4) (not designated for publication); *United States v. Gleich*, 2005 U.S. Dist. LEXIS 5149, 4-6, 9-10 (D. N.D. March 30) (not designated for publication).

[59] *State v. Sorabella*, 277 Conn. 155, 213-14, 891 A.2d 897, 932-33 (2006) (rejecting complaints about Kenneth Lanning's testimony); *Haycraft v. State*, 760 N.E.2d 203, 210-11 (Ind. App. 1st Dist. 2001), *transfer denied*, 774 N.E.2d 514 (Ind. 2002) (holding the testimony admissible as that of a "skilled witness" under Indiana's R. 701); *People v. Petri*, 279 Mich. App. 407, 415-16, 760 N.W.2d 882, 888, *appeal denied*, 482 Mich. 1186, 758 N.W.2d 562 (2008) (Detective could give definition of "grooming" without being an expert but even assuming expert testimony was required, he would have qualified); *State v. Berosik*, 352 Mont. 16, 23, 214 P.3d 776, 782-83 (2009) (upholding admissibility of expert testimony on grooming against relevance and R. 403 objections and explaining, "In Montana, expert testimony explaining the complexities of child sexual abuse for the purpose of assisting jurors in understanding and evaluating a child's testimony is admissible."); *State v. Horton*, 200 N.C. App. 74, 80-81, 682 S.E.2d 754, 758-59 (2009) (upholding admission of expert testimony about grooming techniques against objection that it did not corroborate the

concept of grooming in a way that contributes to the conclusion that it is a well-recognized

phenomenon. Many of these courts have defined or recognized the concept of grooming in the

abstract,[60] while others have relied upon the concept of grooming as a basis for admitting other

evidence,[61] and still others have relied upon the concept of grooming in deciding to take protective

testimony of the child).

[60] *State v. Grainge*, 186 Ariz. 55, 58, 918 P.2d 1073, 1076 (Ariz. App. 1996) (stating that "grooming can be a continuing process that fosters continued acquiescence to [the defendant's] sexual crimes"); *Cannon v. State*, 296 Ga. App. 687, 688, 675 S.E.2d 560, 562-63 (4th Div. 2009) (observing that state had presented evidence of a pattern of "grooming"); *Doe v. Sex Offender Registry Bd.*, 459 Mass. 603, 606, 947 N.E.2d 9, 16 (2011) (reference to "extended periods of 'grooming'"); *People v. Steele*, 283 Mich. App. 472, 491-92, 769 N.W.2d 256, 269-70, *appeal denied*, 485 Mich. 996, 775 N.W.2d 146 (2009) (definition of "grooming"); *State v. Sage*, 357 Mont. 99, 103-04, 103 n.3, 235 P.3d 1284, 1287 & n.3 (2010) (definition of "grooming"); *State Farm Ins. Co. v. Bruns*, 156 N.H. 708, 713, 942 A.2d 1275, 1280 (2008) (citing *State v. McIntyre*, 151 N.H. 465, 468, 861 A.2d 767, 770 (2004) ("describing 'grooming' as a progression in the level of abuse"); *Commonwealth v. Meals*, 590 Pa. 110, 117-18, 912 A.2d 213, 217 (2006) (defining "grooming behavior"); *In re Application of Nash*, 317 Ore. 354, 359 n.3, 855 P.2d 1112, 1114 n.3 (1993) (defining grooming); *State v. Warren*, 165 Wn.2d 17, 35 195 P.3d 940, 949 (2008) (citing *State v. DeVincentis*, 150 Wn.2d 11, 22, 74 P.3d 119 (2003) as discussing evidence of grooming behaviors in child sexual abuse case); *Wease v. State*, 170 P.3d 94, 114, 116 (Wyo. 2007) (referring to "grooming" process).

[61] *State v. Jacobson*, 283 Conn. 618, 628-29, 633-38, 930 A.2d 628, 635-36, 638-40 (2007); *State v. Truman*, 249 P.3d 1169, 1177-78 (Ida. App. 2010) (Evidence of prior acts by defendant with the victim was admissible to show his "continuing criminal design to cultivate a relationship with [the victim] such that she would concede to his sexual demands, also known as 'grooming.'"); *State v. Reid*, 2011 Ida. App. Unpub. LEXIS 261, 11-13 (July 22) (not designated for publication) (extraneous conduct evidenced a common methodology and technique in grooming, controlling, and abusing stepdaughters); *Piercefield v. State*, 877 N.E.2d 1213, 1216 & n.1 (Ind. App. 2007), *transfer denied*, 891 N.E.2d 34 (Ind. 2008) (defining grooming and holding that evidence of defendant's prior acts was admissible to show "preparation or plan" because the evidence showed the defendant's "grooming of the children to familiarize them with touching and create more physical relationship with them"); *State v. Query*, 594 N.W.2d 438, 443-44 (Iowa App. 1999) (prior bad acts could be reasonably interpreted as grooming, showing defendant's motive, intent, plan knowledge, or absence of mistake); *State v. Sena*, 144 N.M. 821, 827, 192 P.3d 1198, 1204 (2008) (upholding the admission of evidence of defendant's prior behavior as "grooming evidence"); *State v. Christensen*, 561 N.W.2d 631, 632-33 (N.D. 1997) (trial court did not abuse discretion in admitting evidence of prior non-criminal acts of touching to show "grooming"); *State v. Borck*, 230 Ore. App. 619, 630-31, 633-

action.[62] In acting to protect the welfare of a child, a Louisiana appellate court pointedly stated:

"[W]e find nothing in the law that would require the courts to ignore such behavior and leave a child

at the mercy of the perpetrator until more harm is done."[63]

Numerous other state court opinions have at least referred to expert testimony on grooming,

and such testimony has come from experts from a variety of occupational backgrounds.[64] Some

35, 635 n.10, 216 P.3d 915, 920-21, 922-23, 923 n.10, *modified on other grounds*, 232 Ore. App. 266, 221 P.3d 749 (2009), *review denied*, 348 Ore. 291, 231 P.3d 795 (2010) (letters from defendant admissible to show grooming, which in turn tended to show that the defendant's touching was not benign or incidental); *State v. Pottebaum*, 2008 Tenn. Crim. App. LEXIS 1005, 25-28 (Tenn. Crim. App. 2008, appeal denied) (not designated for publication) (trial court did not err in admitting evidence of defendant's prior behavior toward victim under Rule 404(b) because, in part, it showed "grooming").

[62] *People ex rel. C.L.S.*, 934 P.2d 851, 856 (Colo. App. 1996, cert. denied) (juvenile court found sufficient evidence of behaviors that might be a grooming procedure to justify requiring child's father to submit to a sexual-aggression evaluation and possible treatment); *In the Interest of D.D.*, 653 N.W.2d 359, 362 (Iowa 2002) (expressing concern about child protection worker's characterization of father's behavior as "part of a grooming process" for more serious sexual abuse in upholding juvenile-court intervention on behalf of children); *Newton v. Berry*, 15 So. 3d 262, 263-64, 266-67 (La. App. 2nd Cir. 2009) (upholding protective order under Domestic Abuse Assistance statute after recognizing that the stepfather had engaged in grooming behavior); *Matter of Mudge v. Huxley*, 79 A.D.3d 1395, 1396-97, 914 N.Y.S.2d 339, 340-41 (A.D. 3rd Dept. 2010) (upholding suspension of teacher certification because rational basis supported conclusion that teacher was engaged in grooming students); *Grosinger v. M.D. (In re M.D.)*, 598 N.W.2d 799, 807-08 (N.D. 1999) (upholding order committing subject as a sexually dangerous individual in part on evidence that subject was engaging in "grooming" conduct).

[63] *Newton*, 15 So. 3d at 267.

[64] *Reece v. State*, 881 P.2d 1135, 1138 n.3 (Alas. App. 1994), *pet. granted*, 1995 Alas. LEXIS 15 (Feb. 17, 1995) (Alaska state trooper); *Skrepich v. State*, 740 P.2d 950, 952 (Alas. App. 1987) (therapist); *Curry v. State*, 2009 Alas. App. LEXIS 79, 6-8 (Alas. App. May 20) (not designated for publication) (police officer specializing in child-sexual-abuse investigations); *State Farm Fire & Casualty Co. v. Brown*, 183 Ariz. 518, 519 n.4, 905 P.2d 527, 528 n.4 (Ariz App. 1995, review denied) (marital counselor); *People v. Rot*, 2011 Cal. App. Unpub. LEXIS 4962, 9 (6th Dist. June 30) (not designated for publication) (Carl Lewis, former senior investigatory with District Attorney's Office); *People v. Kilmer*, 2010 Cal. App. Unpub. LEXIS 4397, 16-17 (1st Dist. June 11) (not designated for publication) (criminal profiler with the California Department of Justice); *People*

appellate opinions contain trial-court references to the concept of grooming.[65] Cases have also

involved an extraneous-offense victim who learned about the grooming process in sex offender

_v. Torres_, 2009 Cal. App. Unpub. LEXIS 9713, 15-16 (2nd Dist December 8) (not designated for publication) (Los Angeles police detective who was an expert on child exploitation); _People v. Morrison_, 985 P.2d 1, 3 (Colo. App. 1999), _aff'd_, 19 P.3d 668 (Colo. 2000) (licensed marriage and family therapist with a Ph.D. in clinical psychology); _Clark v. State_, 41 So. 3d 1052, 1055 (Fla App 3rd Dist 2010) (psychologist); _In the Interest of A.P._, 299 Ga. App. 886, 887-88, 684 S.E.2d 22, 23 (2nd Div 2009) (psychologist); _People v. Steven E. (In re Steven E.)_, 341 Ill. App. 3d 294, 295-96, 792 N.E.2d 408, 410 (2nd Dist. 2003) (licensed clinical psychologist with a doctorate in clinical psychology); _People v. Rainey_, 325 Ill. App. 3d 573, 579-80, 758 N.E.2d 492, 498 (4th Dist. 2001), _appeal denied_, 198 Ill. 2d 604, 766 N.E.2d 243 (2002) (board-certified psychologist); _State v. Waddell_, 2009 Kan. App. Unpub. LEXIS 943, 5 (Kan. App. November 12), _remanded on other grounds_, 2010 Kan. LEXIS 683 (Sept. 7) (not designated for publication) (police detective); _State v. Morgan_, 948 So. 2d 199, 205 (La. App. 5th Cir. 2006) (detective with sheriff's office); _Coates v. State_, 175 Md. App. 588, 607, 930 A.2d 1140, 1151 (2007), _aff'd_, 405 Md. 131, 950 A.2d 114 (2008) (social worker); _In re Bieganowski_, 520 N.W.2d 525, 527, 529-30 (Minn. App. 1994) (psychiatrist and court-appointed examiner); _State v. Standifer_, 2011 Minn. App. Unpub. LEXIS 671, 5-8 (July 11) (not designated for publication); _Martineau v. State_, 242 S.W.3d 456, 459 (Mo. App., S.D. 2007); _State v. Gonzalez_, 2010 Neb. App. LEXIS 165, 11-16 (2010) (not designated for publication) (investigator for the Nebraska Attorney General's Office); _In re Commitment of J.M.B._, 197 N.J. 563, 587, 590, 592-94, 964 A.2d 752 (2009); _State v. A.B._, 2011 N.J. Super. Unpub. LEXIS 322, 9-10, 15-16 (A.D. February 14) (not designated for publication) (social worker with a PhD who was supervisor at the Audrey Hepburn Children's House at the Hackensack University Medical Center); _In re K.H._, 119 Ohio St. 3d 538, 539, 541, 543-44, 895 N.E.2d 809, 810, 812, 813-14 (2008) (sex-offender-treatment expert); _In re C.C._, 187 Ohio App. 3d 365, 372, 375, 932 N.E.2d 360, 365, 367-68 (8th Dist. 2010) (social worker); _State v. Dillon_, 788 N.W.2d 360, 364 (S.D. 2010) (clinical psychologist); _Commonwealth v. Miller_, 273 Va. 540, 544, 643 S.E.2d 208, 210 (2007) (clinical psychologist); _State v. Trochinski_, 253 Wis. 2d 38, 79 n.37, 644 N.W.2d 891, 911 n.37 (2002) (Abrahamson, C.J., dissenting) (parole officer); _Roberts v. State_, 912 P.2d 1110, 1112 (Wyo. 1996) (child sex abuse therapist).

[65] _Bieganowski_, 520 N.W.2d at 530; _State v. Deason_, 240 S.W.3d 767, 771 (Mo. App., S.D. 2007) (The trial court denied a defense motion to exclude testimony relating to "medicine tests . . . because it constituted 'grooming evidence, which the courts have already ruled is admissible to show the progression of the molestation.'"); _Pottebaum_, 2008 Tenn. Crim. App. LEXIS 1005, 26-27; _State v. Munguia_, 253 P.3d 1082, 1085, 1087 (Utah 2011) (term used by adult probation and parole department and by trial court); _In re E.S._, 183 Vt. 645, 2007 Vt. Unpub. LEXIS 152, 4-5 (2007) (three-judge panel, not designated for publication); _State v. Church_, 262 Wis. 2d 678, 684, 665 N.W.2d 141, 144 (2003) (trial court expressed concern about defendant's "grooming behavior");

counseling for sex offenses of his own,[66] a subject's admission that he had engaged in grooming,[67] and a clinician's warning to parents that a counselor was engaging with their child in "classic grooming behavior engaged in by child molesters."[68] There is also a case in which a psychotherapist engaged in the grooming of his step-children for sexual abuse.[69] In that case, the Nebraska court of appeals stated: "We believe the evidence is ample to establish that Collins' manipulation and deception of J.C. rendered her incapable of resisting or appraising the real nature of the sexual penetration that he visited upon her during the relevant time period. Moreover, that someone of Collins' training knew or should have known of such diminished capacity needs no further discussion."[70] A handful of state appellate courts have excluded some expert testimony on grooming, but at least some of those seem to recognize that there may be instances in which expert testimony on grooming may be admissible.[71]

---

[66] *Allen v. State*, 374 Ark. 309, 315, 287 S.W.3d 579, 583-84 (2008).

[67] *R.R. v. State*, 2010 Ark. App. 689, 3, 2010 Ark. App. LEXIS 738, 3 (October 20).

[68] *John Y. v. Chaparral Treatment Center, Inc.*, 101 Cal. App. 4th 565, 571, 124 Cal. Rptr. 2d 330, 335 (4th Dist 2002, review denied).

[69] *State v. Collins*, 7 Neb. App. 187, 203-05, 583 N.W.2d 341, 351-52 (1998).

[70] *Id.* at 352.

[71] *State v. Vidrine*, 9 So. 3d 1095, 1103, 1110-11 (La. App. 3rd Cir. 2009), *writ denied*, 28 So. 3d 268 (La. 2010) (finding testimony to be impermissible comment on credibility); *People v Diaz*, 926 N.Y.S.2d 128, 130, 132 (A.D. 2nd Dept. 2011) (expert testimony on grooming admissible to explain unusual behavior of a victim, but inadmissible merely to show that the sexual assault took place or to bolster a witness's credibility); *State v. Stevens*, 328 Ore. 116, 126-27, 970 P.2d 215, 222-23 (1998) (murder conviction) (Although earlier case of *State v. Hansen*, 304 Ore. 169, 173-76, 743 P.2d 157, 159-61 (1987) excluded expert testimony on grooming, it did not hold that such testimony is, in all circumstances, inadmissible. Experts can explain seemingly abnormal responses of a certain class of victims but must refrain from providing details of the victimization process.); *State v. LaBounty*, 168 Vt. 129, 141, 716 A.2d 1, 9 (1998) (saying that "profile" evidence has been overwhelmingly disapproved by appellate courts); *In re Det. of Thorell*, 149 Wn.2d 724, 757, 72

The earliest published state cases explicitly referring to "grooming" appear to be *Skrepich* and *Hansen*, decided in Alaska and Oregon in 1987, while the earliest published federal circuit case appears to be *Johnson*, from the Ninth Circuit in 1997.[72] As can be seen throughout our discussion, the frequency with which the concept of "grooming" appears in the cases has risen dramatically as the years have passed, with numerous cases containing such references in the last three years. Although most of these cases involved the use of grooming evidence at criminal trials, a significant number of cases involved other types of proceedings, such as: civil commitment proceedings for sexually dangerous predators,[73] proceedings involving the termination of parental rights or to protect children,[74] a proceeding regarding child visitation,[75] civil lawsuits,[76] the modification of supervised

P.3d 708, 726 (2003) (profile evidence inadmissible, citing *State v. Braham*); *Braham*, 67 Wn. App. 930, 937-39, 938 n.5, 939 n.7, 841 P.2d 785, 789-90, 790 ns.5, 7 (Div. 1 1992) (holding grooming evidence inadmissible under R. 403 under the facts of the case, but not foreclosing admissibility in every case and not addressing R. 702).

[72]  *See* this opinion, *ante*.

[73]  *Eeds*, 254 S.W.3d 555; *Wetmore*, 766 F. Supp. 2d 319; *Force*, 2009 U.S. Dist. LEXIS 68497; *Clark*, 41 So. 3d 1052; *Rainey*, 325 Ill. App. 3d 573, 758 N.E.2d 492; *Bieganowski*, 520 N.W.2d 525 (commitment for an indeterminate period as a psychopathic personality); *Martineau*, 242 S.W.3d 456; *J.M.B.*, 197 N.J. 563, 964 A.2d 752; *Grosinger*, 598 N.W.2d 799; *Meals*, 590 Pa. 110, 912 A.2d 213; *Thorell*, 149 Wn.2d 724, 72 P.3d 708.

[74]  *Sylvia*, 2010 Tex. App. LEXIS 2752 (termination of parental rights); *C.L.S.*, 934 P.2d 851 (juvenile dependency and neglect proceedings); *A.P.*, 299 Ga. App. 886, 684 S.E.2d 22 (juvenile-court judgment finding child deprived due to sex abuse); *Steven E.*, 341 Ill. App. 3d 294, 792 N.E.2d 408 (order of wardship); *D.D.*, 653 N.W.2d 359 (juvenile-court adjudication of children in need of assistance); *Newton*, 15 So. 3d 262 (judgment imposing protective order under Domestic Abuse Assistance statute); *K.H.*, 119 Ohio St. 3d 538, 895 N.E.2d 809 (termination of parental rights); *C.C.*, 187 Ohio App. 3d 365, 932 N.E.2d 360 (same); *E.S.*, 183 Vt. 645, 2007 Vt. Unpub. LEXIS 152 (same).

[75]  *Hale*, 2006 Tex. App. LEXIS 747.

[76]  *Coley*, 2011 U.S. App. LEXIS 10690; *Doe v. Smith*, 470 F.3d 331, 335 n.3, 348 (7th Cir. 2006); *Powell's Books*, 622 F.3d 1202; *Schnitzler*, 518 F. Supp. 2d 1098; *Liberatore*, 478 F. Supp.

release,[77] a motion-to-suppress hearing,[78] bail or pretrial-detention hearings,[79] appeals from orders requiring sex-offender registration,[80] the suspension of teacher certification,[81] and a denial of reinstatement after being disbarred.[82]

Some courts have recognized the targeting of grooming as one of the purposes of a particular criminal statute,[83] and the term "grooming" has been used by trial courts[84] and sex-offender treatment

---

2d 742; *Am. Booksellers Found.*, 202 F. Supp. 2d 300; *Ordemann*, 2008 U.S. Dist. LEXIS 39409; *State Farm Fire & Casualty Co.*, 183 Ariz. 518, 905 P.2d 527; *John Y.*, 101 Cal. App. 4th 565, 124 Cal. Rptr. 2d 330; *Doe v. Garcia*, 126 Idaho 1036, 895 P.2d 1229 (1995); *State Farm Ins. Co.*, 156 N.H. 708, 942 A.2d 1275.

[77] *United States v. Penley*, 52 Fed. Appx. 201 (4th Cir. 2002) (not designated for publication).

[78] *Blake*, 2010 U.S. Dist. LEXIS 23014.

[79] *Hansel*, 2006 U.S. Dist. LEXIS 54725; *Thomas*, 2006 U.S. Dist. LEXIS 3266; *Christy*, 2010 U.S. Dist. LEXIS 71300; *Farris*, 2008 U.S. Dist. LEXIS 36937.

[80] *R.R.*, 2010 Ark. App. 689, 2010 Ark. App. LEXIS 738; *B.W. v. State*, 909 N.E.2d 471, 474 (Ind. App. 2009); *Doe v. Sex Offender Registry Bd.*, 459 Mass. 603, 947 N.E.2d 9.

[81] *Mudge*, 79 A.D.3d 1395, 914 N.Y.S.2d 339.

[82] *Nash*, 317 Ore. 354; 855 P.2d 1112.

[83] *United States v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011) (federal criminal enticement statute "targets the sexual grooming of minors as well as the actual sexual exploitation of them"); *Powell's Books v. Kroger*, 622 F.3d 1202, 1206, 1215 (9th Cir. 2010) (recognizing that Oregon criminal statutes were aimed at practices of "luring" and "grooming" that expose minors to sexually explicit materials in the hopes of lowering their inhibitions against engaging in sexual conduct but finding the statutes unconstitutional because they reach a significant amount of material that is not obscene as to minors); *Am. Booksellers Found.*, 202 F. Supp. 2d at 316-17 (Vermont statute, *see* this opinion, footnote 52).

[84] *See* this opinion, footnotes 58 and 65; *United States v. Dorvee*, 616 F.3d 174, 180 (2nd Cir. 2010); *Fancher*, 513 F.3d at 431; *Shafer*, 573 F.3d at 271; *United States v. Beith*, 407 F.3d 881, 885 (7th Cir. 2005); *United States v. Holt*, 510 F.3d 1007, 1010-11 (9th Cir. 2007); *Sullivan*, 2005 U.S. Dist. LEXIS 26339 at 31.

programs,[85] and by at least one state hospital,[86] criminal task force,[87] and probation and parole department.[88] Some courts have used the word "classic" in connection with the term "grooming"—e.g., "classic grooming behavior"—which suggests that these courts view the existence of such a phenomenon as well established.[89] At a military court martial, the expert witness—the Chief of Child Adolescent Family Psychiatry at the Eisenhower Medical Center—testified that grooming was "a fairly well documented phenomena of what certain individuals do to seduce children."[90]

As can be seen from the above discussion, grooming evidence has been received by courts from numerous types of experts—which include psychiatrists, psychologists, therapists, and social workers—but, of importance here, also includes some people who work in law enforcement.[91] In

---

[85] *See Penley*, 52 Fed. Appx. at 202; *Schnitzler*, 518 F. Supp. 2d at 1101.

[86] *Force*, 2009 U.S. Dist. LEXIS 68497 at 6-7, 10

[87] *Young*, 613 F.3d at 739 n.3 (Internet Crimes Against Children Task Force).

[88] *Munguia*, 253 P.3d at 1085.

[89] *Brand*, 467 F.3d at 203 (referring to "classic 'grooming' behavior in preparation for a future sexual encounter"); *United States v. Abston*, 304 Fed. Appx. 701, 704 n.4 (10th Cir. 2008) (referring to "a classic progression-type grooming process used by pedophiles or child molesters"); *Gleich*, 2005 U.S. Dist. LEXIS 5149 at 6 (concluding that defendant "fits the classic profile of a pedophile who was engaged in a clever and calculated scheme to 'groom' a new victim"); *United States v. Garner*, 67 M.J. 734, 735-36, 738-39 (N.M.C.C.A. 2009), *aff'd*, 69 M.J. 31 (C.A.A.F. 2010) (quoting, with approval, from *Brand*); *State v. Garcia*, 200 Ariz. 471, 476, 28 P.3d 327, 332 (Ariz. App. 2001) (referring to "classic 'grooming' activity in molestation cases"); *See also Lopez*, 2008 U.S. Dist. LEXIS 113464 (prosecutor's argument that defendant "engaged in classic grooming"); *John Y.*, cited in this opinion, footnote 68.

[90] *Patterson*, 54 M.J. at 76.

[91] *See* this opinion, footnotes 39 and 64; *United States v. Jordan*, 435 F.3d 693, 696 (7th Cir. 2006) (Special Agent Eric Szatkowski); *Am. Booksellers Found.*, 202 F. Supp. 2d at 316-17 (police officer); *Light*, 2009 U.S. Dist. LEXIS 115715 at 8-9, 17-26 (Carl Lewis, *see Rot*, cited in this

*Coble*, we explained, "Although *Nenno* dealt with the admission of expert testimony concerning future dangerousness, it dealt with the testimony by a layman whose analysis was based on his experience studying sexual victimization of children."[92] In characterizing Lanning as a "layman," we did not mean to suggest that he was not an "expert"—we had just finished saying that *Nenno* dealt with the admission of expert testimony.[93] Rather, we meant that Lanning was not a psychiatrist or psychologist. But because of his research, "Lanning possessed superior knowledge concerning the behavior of offenders who sexually victimized children."[94] Grooming evidence is, at its most basic level, testimony describing the common behaviors of child molesters and whether a type of evidence is consistent with grooming.[95] A person can, through his experience with child-sex-abuse cases gain superior knowledge regarding the grooming phenomenon.

Virtually all of Ranger Hullum's testimony about the phenomenon of grooming finds support

---

opinion, footnote 64); *Lopez*, 2008 U.S. Dist. LEXIS 113464 at 12, 37-47, 50-54 (police detective); *Christy*, 2010 U.S. Dist. LEXIS 71300 at 11-12 & n.5, 23-24 (Special Victims Detective with sheriff's office); *Haycraft*, 760 N.E.2d 203 at 210-11 (police detective).

[92] *Coble*, 330 S.W.3d at 274 n.49.

[93] *Id.*; *see also Nenno*, 970 S.W.2d at 552, 561-62.

[94] *Nenno*, 970 S.W.2d at 562.

[95] The court of appeals in the present case also addressed claims that Ranger Hullum and another witness were improperly allowed to express an opinion on appellant's guilt. *Morris*, 2010 WL 2224651 at 1-9. Assuming that the questions were improper, *id.* at 2, the court conducted a harm analysis and found any error to be harmless. *Id.* at 9. We did not grant review of the harmless error question.

Because it is beyond the scope of our review in this case, we do not address whether an expert can express an opinion on a defendant's probable guilt based on grooming theory and, if so, what qualifications would be required to do so.

in the cases: that it is an attempt by the offender to create a compliant victim;[96] that it involves an escalation of conduct over a (sometimes extended) period of time;[97] that it can involve spending intimate time alone with the child;[98] that it involves having the child's trust;[99] that it is like dating;[100] that it is designed to desensitize the child;[101] that it often begins with innocuous touches that progress to more sensitive areas or with minor touching that progresses to more blatant sexual acts;[102] and that

---

[96] *See e.g.*, *B.W.*, 909 N.E.2d at 474; *Cook*, 2010 Tex. App. LEXIS 8095 at 4; *Mitchell*, 2008 Tex. App. LEXIS 8594 at 3; *Light*, 2009 U.S. Dist. LEXIS 115715 at 8-9;

[97] *See e.g.*, *Weatherly*, 283 S.W.3d at 491-92; *United States v. Hofus*, 598 F.3d 1171, 1177 & n.4 (9th Cir.), *cert. denied*, 131 S. Ct. 364 (2010); *Patterson*, 54 M.J. at 76; *Sorabella*, 277 Conn. at 213-14, 891 A.2d at 932-33; *Garcia*, 126 Idaho at 1043, 895 P.2d at 1236; *Piercefield v. State*, 877 N.E.2d at 1216 & n.1.

[98] *See e.g. Liberatore*, 478 F. Supp. 2d at 750; *Lopez*, 2008 U.S. Dist. LEXIS 113464 at 39-40.

[99] *See e.g.*, *Weatherly*, 283 S.W.3d at 491-92; *Smith*, 470 F.3d at 335 n.3; *Young*, 613 F.3d at 739 n.3; *Hofus*, 598 F.3d at 1177 & n.4; *Batton*, 602 F.3d 1198 n.3; *Wetmore*, 766 F. Supp. 2d at 321-22; *Jacobson*, 283 Conn. at 628-29, 930 A.2d at 635-36; *Piercefield*, 877 N.E.2d at 1216 n.1; *Coates v. State*, 175 Md. App. at 607, 930 A.2d at 1151; *Martineau v. State*, 242 S.W.3d at 459; *Sage*, 357 Mont. at 103 n.3, 235 P.3d at 1287 n.3.

[100] *See Van Houten*, 2009 Tex. App. LEXIS 1301 at 11; *Raymond*, 700 F. Supp. 2d at 151.

[101] *See e.g. Hitt*, 473 F.3d at 152; *State Farm Fire & Casualty Co.*, 183 Ariz. at 519 n.4, 905 P.2d at 528 n.4; *Steele*, 283 Mich. App. at 491-92, 769 N.W.2d at 269-70; *Berosik*, 352 Mont. at 23, 214 P.3d at 782-83; *Borck*, 230 Ore. App. at 630-31, 633-35, 216 P.3d at 920-21, 922-23.

[102] *See e.g.*, *Steele*, 283 Mich. App. at 491-92, 769 N.W.2d at 269-70; *Petri*, 279 Mich. App. at 415, 760 N.W.2d at 888; *State v. Horton*, 200 N.C. App. at 80, 682 S.E.2d at 759; *C.C.*, 187 Ohio App. 3d at 372, 932 N.E.2d 360, 365; *Borck*, 230 Ore. App. at 630-31, 633-35, 216 P.3d at 920-21, 922-23.

it can involve supplying the child with alcohol[103] or pornography,[104] giving gifts,[105] giving back rubs or massages,[106] engaging in "games" or horseplay,[107] or talking about the adult's own prior sexual experiences.[108]

From our discussion, we conclude that grooming as a phenomenon exists and that a law enforcement-official with a significant amount of experience with child sex abuse cases may be qualified to talk about it.[109]

---

[103] *See e.g.*, *Berg*, 640 F.3d at 249; *Long*, 328 F.3d at 665; *Garcia*, 200 Ariz. at 476-77, 28 P.3d at 332-33; *Jones*, 990 A.2d at 976.

[104] *See e.g.*, *Dorvee*, 616 F.3d at 180; *Powell's Books*, 622 F.3d at 1206; *Long*, 328 F.3d at 665; *Am. Booksellers Found.*, 202 F. Supp. 2d at 316; *United States v. Banker*, 63 M.J. 657, 660 (A.F.C.C.A. 2006), *aff'd*, 64 M.J. 437 (C.A.A.F. 2007); *Jones*, 990 A.2d 970, 976.

[105] *See e.g.*, *Hernandez*, 973 S.W.2d at 790; *Hitt*, 473 F.3d at 152; *Long*, 328 F.3d at 665; *Liberatore*, 478 F. Supp. 2d at 750; *Morris*, 246 F. Supp. 2d at 1132; *Nash*, 317 Ore. at 359 n.3, 855 P.2d at 1114 n.3.

[106] *See e.g.*, *Light*, 2009 U.S. Dist. LEXIS 115715 at 8-9 ("back rubs"); *Piercefield v. State*, 877 N.E.2d at 1216 (massages); *Warren*, 165 Wn.2d at 35, 195 P.3d at 949, *citing DeVincentis*, 150 Wn.2d at 22, 74 P.3d at 125-26 (massages).

[107] *See Hernandez*, 973 S.W.2d at 790 (tag game involving pressing penis against victim's backside while both were clothed); *Wagner*, 2010 Tex. App. LEXIS 4087 at 4 ("pony ride" game); *Light*, 2009 U.S. Dist. LEXIS 115715 at 8-9 (may include play such as wrestling and "slapping of the butt"); *Miller*, 273 Va. at 544, 643 S.E.2d at 210 (using games and other methods to engage the victims' interests).

[108] *Jordan*, 435 F.3d at 696 (expert testified that reference to previous relationship with a much younger girl was a grooming technique).

[109] Judge Price misunderstands *Nenno*, or at least which prong of *Nenno* is at issue. He contends that "[u]biquity does not begin to prove reliability" because "the world is full of psychics, horoscopes, tarot card readers, and fortune cookies." Dissent by Price, J. at 8. All of these are examples of fields that have not been recognized by courts as legitimate. If a field is not legitimate, then the prevalence of a practice or subject within the field would not demonstrate anything. Assessing personality based upon one's zodiac sign may be a common occurrence in astrology, for example, but astrology itself has not been held to be a legitimate field of study. As we explained above, the relevant field of study has already been recognized as legitimate in *Nenno*: the experience-

### E. Usefulness to the Jury

Now we consider the inverse question. Is the grooming phenomenon just common knowledge? Does expert testimony add anything to what the jury already knows?[110] We recognize that social awareness of child sex abuse has grown through the years. One of the original justifications for grooming testimony was to dispel what was thought to be "a widely held stereotype of a child molester as 'a dirty old man in a wrinkled raincoat' who snatches children off the street as they wait for the school bus."[111] Some courts have suggested that the stereotype is no longer widely held and that jurors today no longer need to be informed by experts about the grooming

---

based study of "the behavior of offenders who sexually victimize children." *See Nenno*, 970 S.W.2d at 562. How often "grooming" as a subject is addressed by practitioners within this field is clearly relevant to the reliability of grooming testimony as a whole.

Moreover, saying that a field of study or a subject within a field occurs frequently in the world around us is not the same as saying that the matter is addressed frequently in the court system. Judge Price has offered nothing to suggest that one can find frequent references in court decisions to psychics or astrology in anything other than a pejorative sense; he has not cited a single case in which a court admitted such matters into evidence, relied upon such matters in assessing the sufficiency of the evidence, or relied upon such matters in assessing punishment or evaluating a defendant's future dangerousness for various purposes (e.g. civil commitment, pretrial detention, child custody).

Judge Price also faults this Court for not showing "indisputable acceptance in the psychological community," dissent by Price, J. at 9, but the psychological community is not the relevant field of study in the present case. Ranger Hullum did not testify as a psychologist but as an experience-based expert, like Kenneth Lanning, the expert in *Nenno*.

[110] It may not be immediately obvious that this question is implicated in appellant's ground for review. But, having already re-characterized appellant's claim as relating to the second, rather than the first, prong of the *Nenno* inquiry, we consider whether appellant's claim might also be construed as saying that this type of testimony is just common knowledge dressed up as expert testimony.

[111] *Jones*, 990 A.2d at 978. *See also Romero*, 189 F.3d at 584; *Long*, 328 F.3d at 667; *Batton*, 602 F.3d at 1201.

techniques of child molesters.[112]  Other courts have suggested that the factfinder or the appellate

court can infer grooming from the defendant's conduct without the assistance of an expert.[113]

Nevertheless, we find the weightier and more persuasive authority to be that expert grooming

testimony is useful to the jury.  Recent appellate cases suggest that grooming testimony still involves

matters beyond the understanding of the jury.[114]  The District of Columbia Court of Appeals has

explained that, "[w]hile the continuing vitality of such stereotypes may be debatable, we cannot

conclude that the trial judge in this case abused her discretion in ruling that Lanning's grooming

testimony 'was beyond the ken of a lay trier of fact and would be helpful to the jurors in their

consideration of the evidence.'"[115]  We think the D.C. court put the issue in proper perspective when

it said, "*Modus operandi* testimony may be helpful . . . even though it may be familiar to 'the average

---

[112]  *Raymond*, 700 F. Supp. 2d at 151 ("Those observations are hardly rocket science. A jury in 2010 does not need expert testimony to help it understand that not every child abuser is '"a dirty old man in a wrinkled raincoat" who snatches children off the street as they wait for the school bus."); *Schneider*, 83 Fed. R. Evid. Serv. (Callaghan) 820, 2010 U.S. Dist. LEXIS 99662 at 20 ("While such evidence may have been helpful to juries in the past, this Court agrees with the conclusion that a jury in 2010 does not need expert testimony to show that child sexual abusers can often be ostensibly responsible and well-meaning adults who occupy positions of trust in society.")

[113]  *Banker*, 63 M.J. at 660 ("This Court's finding of a pattern of grooming is merely a conclusion we reached after careful review of the evidence in this case."); *Sena*, 144 N.M. at 827, 192 P.3d at 1204 ("[W]e do not agree that the grooming evidence in the instant case needed an expert witness to explain to the jury how Defendant's behavior showed his sexual intent or his lack of mistake or accident . . . . Lay persons are well-aware of what it means to act with a sexual intent, and therefore can identify behavior as exhibiting that trait without the aid of an expert witness.").

[114]  *Batton*, 602 F.3d 1202 ("The methods sex offenders use are not necessarily common knowledge."); *Berosik*, 352 Mont. at 23, 214 P.3d at 782 ("[The expert's] testimony concerned a subject about which lay persons would have little or no experience."); *Jones*, 990 A.2d at 978.  *See also Van Houten*, 2009 Tex. App. LEXIS 1301 at 15 ("[The expert] stated the concept of grooming is information that is not generally known by the common lay person and that testimony about grooming would aid lay persons in understanding a child molestation situation.").

[115]  *Jones*, 990 A.2d at 978.

reader of the daily press.'"[116] Although it may be true that many jurors will be aware of the concept of grooming (in practice if not necessarily by name), that does not mean that all jurors will be aware of the concept or that the jurors will have the depth of understanding needed to resolve the issues before them.

### III. CONCLUSION

We reject appellant's claim that the record failed to show the legitimacy of "grooming" as a subject of expert testimony because the legitimacy of "grooming" as a subject of expert testimony has been established sufficiently to be judicially noticed.[117] We affirm the judgment of the court of

---

[116] *Id.*

[117] Judge Price concedes that "it may sometimes be appropriate for an appellate court to take judicial notice. . . for the first time on direct appeal" but contends that "judicial notice of an adjudicative fact should never be taken for the first time by a discretionary review court." Dissent by Price, J. at 1-2, 5. He cites no authority for this proposition, and his reasoning is not persuasive. He argues that this Court's job is to "shepherd the jurisprudence," *id.* at 5, but that is exactly what we are doing in determining the general reliability of grooming testimony, an important issue that this Court has the ultimate responsibility to resolve. He criticizes us for "doing the vast bulk of the research for the State," *id.* at 4, but the thoroughness of our analysis of this important issue should not depend upon the thoroughness of the briefs.

Judge Price also misapprehends the significance of the procedural posture of this case. He complains that the State did not ask the court of appeals to take judicial notice of the reliability of grooming testimony. *Id.* at 2. But as the prevailing party at trial, the State "was not required to raise any allegations before the court of appeals." *Volosen v. State*, 227 S.W.3d 77, 79, 80 (Tex. Crim. App. 2007) (State appellee may raise for the first time in a petition for discretionary review the argument that a statutory defense was inapplicable to the county in which the conduct occurred). *See also Rhodes v. State*, 240 S.W.3d 882, 886 ns.8, 9 (Tex. Crim. App. 2007) (State appellee may raise for the first time in a petition for discretionary review an estoppel argument that was not raised on original submission in the court of appeals or addressed by that court).

Judge Price also accuses this Court of taking judicial notice "without alerting the appellant beforehand to allow him to marshal some argument in this Court . . . why judicial notice . . . may not be appropriate." Dissent by Price, J. at 4. He suggests that appellant's "only opportunity . . . to challenge the propriety of our action is via a motion for rehearing." *Id.* at 5 n.7. But, as the Judge Price himself acknowledges, the State advanced the judicial notice argument in its brief on discretionary review, *id.* at 2, 3-4, and the State cited relevant federal cases on the matter, *id.* at 3. The State cited *Hitt*, *Hayward*, and *Romero* on the legitimacy of grooming testimony and *Batton* on

appeals.

Delivered: December 7, 2011
Publish

---

the methods of sex offenders not being common knowledge. On the day of oral argument, the State filed a supplemental list of authorities, which included citations to the Texas courts of appeals cases of *Davenport* and *Van Houten*.

At oral argument the State reiterated its position that judicial notice could be taken and it discussed *Bryant*, another Texas court of appeals case. As we noted earlier, appellant's counsel contended at oral argument that the federal cases were not relevant, under *Hernandez*, because they were not presented to the trial court. He did not make the argument that Judge Price now makes on his behalf regarding the absence of a request for judicial notice before the court of appeals. Appellant had the opportunity to respond and did respond at oral argument to the State's judicial notice contention. That the defense was not blind-sided by this contention is suggested by the fact that he did not request permission to file a supplemental brief. *See* TEX. R. APP. P. 70.4.