*In re* BETTIE JO R., a Minor, Respondent-Appellant (The People of the State of Illinois, Petitioner-Appellee; Irene R. *et al.*, Respondents-Appellees).

First District (2nd Division)    No. 1—94—2548

Opinion filed December 19, 1995.—Rehearing denied March 27, 1996.

Patrick T. Murphy, Public Guardian, of Chicago (Lee Ann Lowder, Anne Scheitlin Johnson, and Susan S. Wigoda, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gunta Zenta Hadac, and Ronald DeWald, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE BURKE delivered the opinion of the court:

Respondent Bettie Jo R. appeals from an order of the circuit court of Cook County closing her case and terminating her wardship. On appeal, respondent contends that the circuit court: (1) improperly applied section 2—31, as amended, of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1991, ch. 37, par. 802—31(1) (now 705 ILCS 405/2—31(1) (West 1992))), rather than the preamendment section; and (2) erred in determining that respondent's best interests no longer necessitated that her wardship continue.

On August 1, 1979, a petition for adjudication of wardship was filed in behalf of respondent when she was four years old. The trial court, upon finding probable cause to believe that respondent was neglected, appointed the Guardianship Administrator of the Department of Children and Family Services (DCFS), as temporary guardian. On July 25, 1980, the trial court ordered that DCFS retain custody and guardianship of respondent.

On June 3, 1982, respondent's aunt filed a supplemental petition requesting that the trial court vacate its July 25, 1980, order of guardianship and appoint her as respondent's guardian. The court granted the petition on August 6, 1982. On November 17, 1988, respondent's aunt filed a second supplemental petition requesting that the trial court vacate her guardianship and reappoint DCFS as respondent's guardian because respondent was "out of her control." The trial court granted this petition on January 27, 1989. On June 19, 1992, DCFS filed a supplemental petition seeking a continuation of custody and guardianship of respondent if the court determined, after a review of respondent's present and future status, that it would be in her best interest. The record does not contain an order as to this petition; however, in August 1992, respondent was placed in the custody and guardianship of Hazel Tanner, a nonrelative.

At a permanency planning hearing regarding respondent's case on June 9, 1994, the State's Attorney, in respondent's absence, requested that the trial court close respondent's case. DCFS caseworker Edweena Hamilton, who had been assigned to respondent's case in October 1993, presented a "Uniform Progress Report" (report) detailing respondent's progress from December 1993 to June 1, 1994. In the report, Hamilton stated the following: respondent's goal was "independence"; respondent had made "good progress" toward this goal and had adjusted well to her placement with Tanner; the whereabouts of respondent's father remained unknown and respondent's mother had not made herself available to DCFS; respondent was attending the Academy of Scholastic Achievement (ASA), working toward a high school diploma; respondent's grades from

ASA were not available at the time the report was completed; respondent had a one-year-old daughter who attended day care at ASA while respondent was in class; and DCFS provided respondent's tuition for the spring/summer program at ASA. Hamilton concluded her report by recommending that "[respondent's] case be continued for further progress reporting."

Hamilton also testified that respondent was 19 years old and currently in school, she was doing well in her placement with Tanner and she was doing well in school. While Hamilton had initially written in the report that respondent's case should be continued, Hamilton now felt that if respondent's case were closed, respondent would be able to maintain her goal of independence. When Hamilton was asked whether she believed it would be in respondent's best interest to close her case, Hamilton replied, "Yes." On cross-examination, Hamilton stated that DCFS paid for respondent's tuition at ASA and that respondent's child received on-site day care at ASA while respondent was in class. With respect to respondent's financial resources should her case be closed, the following colloquy occurred:

"Q. [assistant Public Guardian, respondent's counsel:] Do you know how Bettie Jo would pay for school if she wasn't receiving money from DCFS and the case was closed?

A. [Hamilton:] There are programs available to her out there that she could apply for that. I could direct her to [them] if the case was closed.

Q. Would she be accepted to those programs? Do you know? Are you speculating that she can get money?

A. I'm speculating that she probably would be accepted."

After hearing this evidence, the trial court, relying on subsection (1) of section 2—31 of the Act, as amended, effective July 24, 1991 (Ill. Rev. Stat. 1991, ch. 37, par. 802—31(1) (now 705 ILCS 405/2—31(1) (West 1992))), stated that "[p]ursuant to statute these cases are to be automatically closed at age 19 unless the Court finds good cause why they should remain open. There has been no evidence offered to suggest a reason to keep this case open." Respondent's counsel then voiced an objection to the court's application of the amended statute, arguing that preamendment section 2—31, providing for the automatic termination of the wardship of a minor at age 21, should be applied instead. In reply to this objection, the trial court stated that "[t]he statute also says that any party can petition the Court for closure after age 18 and that's what's taking place today." The trial court then ordered respondent's case closed and terminated her wardship.

On June 24, 1994, the Cook County public guardian, in behalf of

respondent, filed a motion to reconsider the trial court's decision to close respondent's case. At the hearing on the motion on June 27, respondent was called as a witness. She testified that she needed DCFS' assistance to complete her education, locate an apartment and find a job. She further stated that she had asked her caseworker how to obtain money for school and day care for her daughter and that her caseworker, in response, suggested that she apply for public assistance. The trial court subsequently denied respondent's motion to reconsider.

On appeal, respondent first contends that the trial court, in terminating her wardship, incorrectly applied subsection (1) of amended section 2—31 of the Act, providing for automatic termination of a wardship at age 19, rather than the preamendment section, providing for automatic termination at age 21. Respondent argues that the preamendment section was applicable because the *original petition* to adjudicate her a ward of the court was filed in 1979 pursuant to the preamendment section. Respondent further argues that subsection (1) of amended section 2—31 was not applicable because that section only applies to those cases in which "a *petition* was filed after *** [July 24, 1991]." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 37, par. 802—31(3) (now 705 ILCS 405/2—31(3) (West 1992)).

The State argues that the trial court correctly applied amended section 2—31 because DCFS' *supplemental petition* for the court's review of the custody and guardianship of respondent was filed on June 19, 1992, after the Act was amended.

The trial court's pronouncement that section 2—31 "also says that any party can petition the Court for closure after age 18 and that's what's taking place today" indicates that the trial court based its decision to terminate respondent's wardship on subsection (2) of section 2—31. Given that subsection (2) is identical in both preamendment section 2—31 and amended section 2—31, it is unnecessary for us to address the applicability or inapplicability of subsection (1) of amended section 2—31, providing for automatic termination of a minor's wardship at age 19.

■ Subsection (2) of section 2—31, provides:

"(2) Whenever the court finds that the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged. The court may at the same time continue or terminate any custodianship or guardianship theretofore ordered but the termination must be made in compliance with Section 2—28." Ill. Rev. Stat. 1991, ch. 37, par. 802—31(2) (now 705 ILCS 405/2—31(2) (West 1992)).

A trial court's decision to terminate a respondent's wardship under this section will be reversed on review "only if the findings of fact are against the manifest weight of the evidence or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order." (*In re T.B.* (1991), 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893, 896.) "A finding of the trial court is against the manifest weight of the evidence if a review of the record clearly demonstrates that the result opposite to the one reached by the trial court was the proper result." *T.B.*, 215 Ill. App. 3d at 1062.

■ It is well settled that the purpose of the Act is to serve the best interest of the minor. (705 ILCS 405/1—2 (West 1992); *In re B.M.* (1993), 248 Ill. App. 3d 76, 79, 618 N.E.2d 374 (holding "the best interest and welfare of the child is the standard applicable to proceedings under the Juvenile Court Act" (705 ILCS 405/1—1 *et seq.* (West 1992))).) In *In re Shawn B.* (1991), 218 Ill. App. 3d 374, 578 N.E.2d 269, the trial court, acting pursuant to preamendment section 2—31, terminated Shawn's wardship at age 18. On appeal, this court reversed, holding that terminating wardships at age 18 "without ensuring that [the minors] are prepared to become useful and independent members of society *** fails to satisfy the court's statutory obligation to act in the best interests of the child." (*Shawn*, 218 Ill. App. 3d at 381-82.) In evaluating whether or not Shawn was a useful and independent member of society, this court recognized that Shawn had been unable to secure a permanent residence or legitimate, steady employment. The record reflected that Shawn's placement in several group homes, shelters and schools was unsuccessful in that Shawn had run away on numerous occasions.

■ In the case at bar, respondent did not exhibit an inability to be a useful and independent member of society as did the minor in *Shawn*. Here, caseworker Hamilton testified that respondent was doing well and that, in her opinion, respondent would be able to achieve her goal of independence even if her case was closed. Respondent has resided with Hazel Tanner since 1992, thereby demonstrating her ability to maintain a permanent residence. While respondent testified that she needed assistance in paying tuition for her education and that she prefers to remain at the Academy of Scholastic Achievement because of the day care facilities, no evidence was presented to show that respondent would be unable to receive other financial assistance for this program.

We find that the trial court properly applied subsection (2) of section 2—31 of the Act and that its determination that respondent's best interest no longer required her wardship was not against the manifest weight of the evidence. Accordingly, the circuit court's or-

der, closing respondent's case and terminating her wardship, is affirmed.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.