*In re* STEVEN E., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Steven E., Respondent-Appellant).

Second District   No. 2—02—0703

Opinion filed June 30, 2003.

Nick Zimmerman, of Sreenan & Cain, P.C., of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paul Benjamin Linton, of Northbrook, for the People.

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Steven E., a minor, appeals the trial court's order continuing his wardship until his twenty-first birthday. We affirm.

The facts are taken from the record. On September 16, 1997, the minor admitted to four counts of criminal sexual assault (720 ILCS 5/12—13(a)(3) (West 1996)), in that the minor committed acts of sexual penetration by placing his penis in the anus and mouth of two of his minor male cousins and placing his penis in his minor brother's rectum. The minor was placed on probation for five years. On February 2, 1998, the minor admitted to two counts of the State's rule to show cause, in that the minor was suspended from school for one week and that he had nonconsensual sexual contact with someone at school. On March 19, 1998, the minor's probation was revoked after he admitted to one count of criminal sexual abuse, in that between February and March 1998, the minor "committed an act of sexual penetration" with another minor boy. The minor was committed to the Department of Corrections for a full commitment. On March 29, 2002, the State petitioned the trial court to continue respondent's wardship until his twenty-first birthday.

At the hearing on the petition to continue wardship, Kenneth Heinrichs, a licensed clinical psychologist with a doctorate in clinical psychology, testified that he worked with the minor while employed in the Department of Corrections, Juvenile Division, at Valley View Youth Correctional Facility, Sex Offender Unit, Able Hall. For one year, beginning in December 2000, Heinrichs met with the minor, twice in group therapy, once or twice a week in formal individual therapy sessions, and many other times in informal meetings. Heinrichs prepared a written report for the hearing.

Heinrichs opined that the minor was at risk of reoffending in the community. He based his opinion on meetings with the minor, observation of the minor during group sessions and other treatment, and the minor's writing assignments. Heinrichs testified that the minor continued to engage in "grooming behavior" of other youths in the hall. "Grooming" is a manipulative behavior intended to set up a sexual offense, including staring at another youth, invading his space, and inappropriate touching. Heinrichs saw the minor inappropriately touch other youths during group therapy. Further, the minor's peers

complained of the minor's grooming behavior as recently as one month before the hearing. Heinrichs stated in a letter that the minor, who had been transferred to the Mill program in Rockford, was transferred back to Valley View in December 2000 because the minor had pornography in his possession and had inappropriately touched another resident. Heinrichs described these incidents as stalking and predatory.

Heinrichs also stated that the minor minimized the extent of the use of force with his victims. The minor presented the offenses in "such a way that his victims were going along with the behavior, that it was consensual acting out." When confronted with this during a group session, the minor admitted that he commanded one of his victims to hold still while he engaged in a deviant act. Heinrichs stated that there was an element of coercion that the minor never really addressed.

Heinrichs stated that the minor showed some success in treatment and tried to manage his deviant desires but that his grooming behavior demonstrated that the minor was manipulative. Heinrichs believed that the minor was malingering in treatment. The minor falsely presented as a normal adolescent in certain checklist assessments, but his history reflected a deviant profile in which all of his victims had been boys. Heinrichs stated that he did not perform any empirical tests to determine the minor's likelihood to reoffend. However, Heinrichs opined that the minor needed to be monitored very closely and needed to continue to work on his relapse prevention plan. The minor needed an intensive outpatient program, individual therapy sessions, group work with other sex offenders, and family meetings to make the family aware of the minor's triggers and behavioral cycle. The minor needed to be monitored. Heinrichs offered hope, saying that the minor should be reevaluated after two years at the latest because the minor is changing and hopefully will continue to change. He acknowledged that anyone who had committed the kinds of offenses committed by the minor was at risk to reoffend. Finally, Heinrichs opined that it was in the best interest of both the public and the minor to extend wardship.

The minor testified that continued monitoring would help him control his impulses. As long as the minor could talk to his mother, counselor, or family members, the minor believed he could control his impulses without monitoring. On release, the minor would live with his mother, who now lives alone, in the Rockford area. At times, his mother would not be available to talk to him. On such occasions it may be harder for him to control his impulses. The minor may have a position working for his father's company or at the Metro Center in

Rockford. The minor was close to receiving his high school diploma and had inquired about various sex offender treatment counselors in the Rockford area.

Kimberly E., the minor's mother, testified that she has a heart condition, is on disability, and lives alone. The mother stated that upon release the minor could live with her and that the mother's counselor agreed to see her and the minor in group counseling and the minor in individual counseling. The mother stated that she had seen changes in the minor during his incarceration.

After considering the evidence and arguments, the trial court granted the State's petition to continue the minor's wardship until his twenty-first birthday. The trial court found that there was satisfactory evidence presented that it was in the best interest of the minor and the public that wardship continue. The trial court denied the minor's motion for reconsideration and this appeal followed.

On appeal, the minor argues that the extension of his wardship violates *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), because the State proved the extension was in the best interest of the minor and the public by only "satisfactory evidence." 705 ILCS 405/5—34 (West 1994). The minor argues that the extension increases the minor's sentence beyond the statutory maximum and, thus, *Apprendi* requires that the best interest be proven beyond a reasonable doubt. We disagree.

■ At the time the minor admitted his delinquency petition, section 5—34 of the Juvenile Court Act of 1987 (Juvenile Court Act) provided in pertinent part:

"(1) All proceedings under this Act in respect of any minor for whom a petition was filed after the effective date of this amendatory Act of 1991 automatically terminate upon his attaining the age of 19 years, except that:

\*\*\*

(b) a court may continue the wardship of a minor until age 21 for good cause when there is satisfactory evidence presented to the court that the best interests of the minor and the public require the continuation of the wardship." 705 ILCS 405/5—34 (West 1994).

■ The United States Supreme Court delivered the following holding in *Apprendi* as its bottom line:

"Other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

■ In this case, the consideration of whether it is in the best inter-

est of the public and the minor to continue wardship does not concern an increase of the minor's maximum possible sentence because, once a minor is found to be delinquent, the prescribed statutory maximum is wardship until the age of 21. See 705 ILCS 405/5—34 (West 1994); see also *People v. Hopkins*, 201 Ill. 2d 26, 39-40 (2002). Further, unlike a sentence, wardship is a status, not a penalty, and, thus, *Apprendi* does not apply.

■ Next, the minor argues that there was insufficient evidence to support the trial court's finding that it was in the best interest of the public and the minor to extend wardship. We disagree.

Here, Dr. Heinrichs expressly opined that it was in the best interest of the public and the minor to extend the minor's wardship. Heinrichs stated that he based his opinion on the minor's behavior and the fact that he minimized aspects of his offenses. The minor engaged in grooming behavior one month before the hearing, and the purpose of this behavior was to prepare other victims. Heinrichs saw the minor inappropriately touch other boys in the hall. The minor also minimized his responsibility for his past conduct by failing to recognize that he had used force on his victims. Heinrichs stated that the minor needed constant treatment and monitoring, and the record showed that, upon the minor's release, it was uncertain whether that would occur. We acknowledge that Heinrichs stated that anyone with the minor's history had a risk of reoffending, but that was not the basis of his opinion. Further, Heinrichs did not expressly state that his opinion was within a reasonable degree of medical certainty. However, the testimony reveals that Heinrichs based his opinion on his specialized knowledge and experience as a trained psychologist and sexual abuse counselor. The minor's assertion that Heinrichs based his opinion on a gut feeling misstates the record. The transcript of the testimony reveals that Heinrichs expressly rejected this characterization of the basis for his opinion. In light of the more than satisfactory evidence contained in the record to support the State's petition, we cannot say that the trial court's findings were against the manifest weight of the evidence. *In re Bettie Jo R.*, 277 Ill. App. 3d 401, 405 (1995).

■ Lastly, the minor argues that Heinrichs's opinion must be disregarded because it could not pass the *Frye* test. See *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). It is well settled that a psychologist's opinion regarding an individual's future dangerousness is generally admissible without application of the *Frye* test when his opinion is based on clinical observation or personal experience and not a novel scientific methodology. See *People v. Taylor*, 335 Ill. App. 3d 965 (2002). Because Heinrichs based his opinion on his own observation and experience and not a new methodology, *Frye* does not apply.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HUTCHINSON, P.J., and KAPALA, J., concur.