2020 IL App (2d) 190413-U
Nos. 2-19-0413 & 2-19-0414 (cons.)
Order filed January 15, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Maggie S. & Curtis S., Minors. | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| | ) | |
| | ) | No. 18-JA-04 |
| | ) | No. 18-JA-05 |
| (The People of the State of | ) | |
| Illinois, Petitioner-Appellee,v. | ) | |
| Illinois Department of Children and Family | ) | |
| Services and Janet Ahern, Guardianship | ) | Honorable |
| Administrator, Respondents-Appellants). | ) | Ronald Matekaitis, |
| | ) | Judge,Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Zenoff and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court properly granted the State's motion to dismiss the neglect petitions when the reason that the children were found neglected, the father's drug use, no longer applied after the father died of a drug overdose and the children's mother had predeceased the father.

¶ 2   Appellants, the Illinois Department of Children and Family Services (DCFS), appeals from an order of the trial court granting the State's motion to dismiss two neglect petitions.  For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4    The record reflects that on January 19, 2018, the State filed neglect petitions alleging that three-year-old Maggie S. (Maggie) and two-month-old Curtis S. (Curtis) were neglected because their environment was injurious to them in that: (1) on November 28, 2017, their father, Ethan S. (Ethan) was found unresponsive in their house from heroin use; and (2) Ethan had ongoing substance abuse problems. 705 ILCS 405/2-3(1)(b) (West 2018). The children's mother had died in October 2017. The trial court appointed DCFS as temporary guardian and Jeffrey Kramer as the children's attorney.

¶ 5    DCFS placed the children with their paternal grandparents, DeWitt and Elizabeth S, to act as foster parents. On April 20, 2018, the court entered an adjudicatory order finding that Ethan had stipulated to the children having been in an injurious environment as defined by the Juvenile Court Act (Act). 705 ILCS 405/2-3(1)(h) (West 2018). The court also entered a dispositional order finding that Ethan was unfit and unable to care for his children, but not that he was unwilling to do so. The court made the children wards of the court, began permanency proceedings and granted DCFS the discretion to eventually allow Ethan unsupervised visitation with the children. It also ordered that Court Appointed Special Advocates (CASA) be the children's guardian *ad litem* (GAL).

¶ 6    DCFS filed a service plan with the court and permanency proceedings began. However, on January 19, 2019, Ethan died of a drug overdose. Therefore, on January 24, 2019, DCFS informed the court that it wanted to change the previous goal from return home within 12 months to that of adoption. The State said that it had no objection to that change of goal. CASA also did not object to the goal change, but it raised issues involving the children's inheritance of their parent's home, which the children's maternal grandmother had purchased for the family. CASA also referred to a probate proceeding that had been brought after the children's mother died. That

probate case had been dismissed when the juvenile neglect proceedings were initiated. DCFS commented that the children's financial issues were outside of the scope of these proceedings.

¶ 7　　The trial court said it would continue the proceedings for four to six weeks to meet its permanency timeline obligations. DCFS indicated that it was not looking to change the children's placement and requested that CASA not be allowed to contact people not involved in this juvenile proceeding in any search for an alternate placement. CASA said that did not wish for a change in placement. The trial court entered an order continuing the permanency proceedings to February 2019.

¶ 8　　On February 19, 2019, Dominica Martin and Kevin Foley, sister and brother-in-law of the children's deceased mother, filed a motion to consolidate. In their motion they noted that they had also filed a motion to reinstate cases 17 P 131 and 17 P 132, the earlier probate cases that had been dismissed. Since both biological parents were deceased, they alleged that the probate cases should be consolidated with the children's juvenile cases. On that day Martin and Foley also filed a motion to intervene in the juvenile case. In that motion they alleged that a GAL had been appointed in the prior probate cases, a thorough investigation was conducted, and the GAL had recommended that Martin and Foley be granted guardianship of the children.

¶ 9　　On March 12, 2019, DCFS filed a response in opposition to Martin and Foley's motion to consolidate. In its response DCFS noted that the children were wards of the court and that DCFS had been appointed as their guardian in the juvenile proceedings. It also said that pursuant to Illinois law, all juvenile proceedings are confidential and Martin and Foley were not parties to the juvenile proceedings, therefore, the juvenile case could not be consolidated with the probate case.

¶ 10　　On March 14, 2019, Martin and Foley filed a motion for leave to file a petition for adoption in the juvenile proceedings. In the motion they alleged that it was in the children's best interests

for their maternal aunt and uncle to adopt them, and since they are legally related to the children, they were eligible to file a petition for adoption.

¶ 11    That same day CASA filed a motion to dismiss the State's neglect petition for Maggie and Curtis.  In the motion it argued that the petition no longer stated a cause of action because the neglect allegations stemmed from Ethan's actions and he was deceased, as was the children's mother.  Therefore, it argued, the petition was null and void.  CASA said that the minors remained wards of the court and that jurisdiction was still proper in De Kalb County.  It said that it was in the children's best interests that: (1) their care be decided in the probate court (17 P 131 and 17 P 132); (2) their relatives be allowed to file adoption petitions for the children; or (3) the State file petitions for adjudication because the children were dependents pursuant to section 2-4(1)(a) of the Act.  705 ILCS 405/2-4(1)(a) (West 2018).  CASA noted that both the grandparents and the children's aunt and uncle could file adoption petitions pursuant to section 50/1(B) of the Adoption Act.  750 ILCS 50/1(B) (West 2018).

¶ 12    On March 19, 2019, the children's court-appointed attorney filed a response to CASA's motion to dismiss and noted that, pursuant to the Probate Act, the probate court lacked jurisdiction to proceed on a petition to appoint a guardian for a minor when a court of competent jurisdiction had already appointed a guardian. See 755 ILCS 5/11-5(b) (West 2018).  He also argued that the children were properly in the care of their grandparents, the current foster parents, and that Martin and Foley did not "fall within the limitations of the Juvenile Court Act for intervenor status."  The children were in a "pre-adoptive" relative foster home and appeared to be well settled there.  Counsel then said it would be appropriate if the juvenile court judge and the probate court judge conferred to determine which proceeding should continue based upon the best interests of the children.  Counsel again raised the argument that the probate court could not appoint a guardian

for the children when a guardian had already been appointed in another court. Finally, counsel requested that the juvenile court judge deny Martin and Foley's petition to intervene and to "proceed with the appropriate administration of these proceedings."

¶ 13    On March 26, 2019, DCFS filed a response to CASA's motion to dismiss. DCFS argued that CASA's motion to dismiss filed pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)) should be denied because that section of the Code related to defects on the pleadings, and CASA failed to state any defects in the neglect petition in its motion to dismiss. DCFS also alleged that CASA had shared its motion with individuals that were not parties to this case in violation of the Act. Therefore, DCFS requested that CASA's motion be denied and that the court impose sanctions on CASA.

¶ 14    On April 5, 2019, the State announced its intention to withdraw the pending juvenile case in the near future because both parents were deceased. The State suggested that the juvenile court should allow the probate court to proceed with a petition for guardianship filed by Martin and Foley.

¶ 15    On April 8, 2019, the grandparents filed a petition for adoption of the children. That petition was scheduled for a case management conference on July 2, 2019, in front of the same trial judge that presided over these juvenile proceedings.

¶ 16    On April 19, 2019, DCFS filed a motion to conclude the permanency planning hearing that began on January 4, 2019. It the motion it alleged that: (1) the State's Attorney did not have the absolute right to dismiss the pending juvenile action; (2) the court must conduct permanency hearings every six months to review and evaluate the dispositional order and it had not done so; and (3) CASA's motion to dismiss was improper. Therefore, DCFS asked that the court conclude the permanency hearing, find that the appropriate permanency goal for the children was substitute

care pending court determination of termination of parental rights, conduct a prove up and "best interests" hearing, make a finding that the minors' placement was necessary and appropriate to the case plan and goal, and make a finding that DCFS had made reasonable efforts to facilitate the achievement of the permanency goal.

¶ 17    On April 26, 2019, the court continued DCFS' motion to conclude the permanency hearing to May 10, 2019, over DCFS' objection.

¶ 18    On May 3, 2019, CASA responded to DCFS' motion to conclude the permanency hearing. In its response CASA denied that the court had taken no further action to conclude the permanency hearing.  Instead, CASA said that the court wanted all interested parties to have an opportunity to present motions and responsive pleadings before making a decision regarding the best interests of the children.  It admitted that the State did not have the absolute right to dismiss a neglect petition but noted that the court may allow the State's motion to dismiss if it served the best interests of the children.  CASA noted that DCFS' motion presented no authority as to why the death of the minors' parents did not allow for the withdrawal of the juvenile case.  CASA denied that the appropriate goal was substitute care pending determination on termination of parental rights.  Since the children's father died within 9 months following the adjudication hearing he did not have a full opportunity  to correct the conditions that led to the removal of the children.  CASA alleged that a finding of fitness may not be made on deceased parents.

¶ 19    The hearing scheduled for May 10, 2019, was continued to May 13, 2019.  The court heard the outstanding motions and objections, and after noting how incredibly sad the circumstances were in this case, it made the following comments:

> "There are two sets of individuals represented by counsel that have stepped forward
> indicating they wish to provide a permanent home for these children.  There are financial

issues associated with what assets may remain that would be for the benefit of these children. I think a probate court is well suited to address those issues on behalf of those competing parties, if you will, as well as [to] look out for the best interests of the children.

While the State may not have the absolute right, the court can stand in a position of granting the State's request to dismiss the case, withdraw the petition and have the case dismissed and that would be the order of the court."

¶ 20 DCFS counsel then asked the court to reconsider its rulings, and the court said that a motion for reconsideration had to be in writing. Counsel responded, "[o]kay, Judge. I need for you to sign these before we can move forward." The court replied, "[C]all the other case."

¶ 21 On May 14, 2019, the State filed a motion to clarify the court's order of May 13, 2019. A hearing was held on that motion on May 17, 2019. At the hearing the court said:

"All right. Well, maybe I can help provide some clarity, then.

I thought the whole point was terminating the case to allow the probate court to take over the matter so what you did instantaneously to the extent that the children were in legal limbo lasted [that] for a matter of minutes. Nobody left the courtroom in terms of the caregivers who were then appointed temporary guardians.

For clarification purposes the court would vacate DCFS's guardianship in these matters and terminate the wardship of the minors and close the case."

¶ 22 Counsel for DCFS said that the problem was that the probate case did not give anyone the right to consent to any type of "treatment or medical. The language was not used." Counsel asked that the cause be continued, that the State put their motion to withdraw in writing, and that the Attorney General clarify its order in the probate case and that the parties go back into juvenile court when all that was done.

¶ 23   The court denied DCFS' motion to complete the permanency hearing and dismissed the case.  No specific ruling was made on Martin and Foley's motions.

¶ 24   The court replied:

> "The Attorney General can file whatever motions they [*sic*]  feel are appropriate, and if that includes seeking clarification with respect to medical treatment on behalf of the minors, the probate court will take that up, but this case is now closed.  DCFS' guardianship has ended and wardship of the minors is vacated as well.  That's the last of this case unless and until if ever the Appellate Court says otherwise."

The court said that guardianship included custody as well.  DCFS timely filed a notice of appeal.

¶ 25                                    II. ANALYSIS

¶ 26   Before we address the merits of this case we must dispose of some procedural matters.  In its opening brief, DCFS did not designate these appeals as ones involving matters subject to an expedited disposition pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018).  After DCFS filed its brief, the State filed a memorandum in lieu of brief, as well as a motion for summary remand a requesting that this court summarily remand this cause back to the trial court and have the trial court transfer the neglect case to the trial court judge that was hearing the probate matters.  DCFS filed a response to the State's motion for summary remand.  In its response, DCFS argued that the issues in these appeals did not trigger the accelerated schedule set forth in Rule 311.  Specifically, it argued that the trial court's dismissal order involved no change of custody for the minor children since they had been previously placed with their paternal grandparents and they currently remained in their custody.  Instead, it claimed, this case only involves the legal question of whether the trial court erred in dismissing the neglect petition.  The State then filed a motion to strike.  Among other arguments in the motion, the State contended that this case should be

accelerated pursuant to Rule 311 because by discharging the only legal guardian and custodian the minors had, DCFS, the trial court's order clearly involved a matter of child guardianship/custody and therefore, Rule 311 applied.

¶ 27     We agree with the State that this case is, indeed, a case involving child custody, and any argument to the contrary is frivolous.  Therefore, it should be considered an accelerated case pursuant to Rule 311.  We need not address any remaining arguments presented by the State in its motion for summary remand.  For that reason, the State's motion to strike is denied as moot.

¶ 28     Pursuant to Rule 311(a) (eff. July 1, 2018), the appellate court must issue its decision within 150 days of the filing of the notice of appeal, except for good cause shown.  Here, DCFS filed its original notice of appeal on May 13, 2019.  However, the State did not file its memorandum in lieu of brief and designate this case as expedited under Rule 311 until October 1, 2019, which was 141 days after the notice of appeal was filed.  Given that DCFS' reply brief, the State's motion to strike and DCFS' response to that motion were all filed after the 150 days had run, we find that good cause exists here to file this case outside the time frame allowed in Rule 311.

¶ 29     We now turn to the merits of DCFS' appeal.

¶ 30     DCFS argues that in dismissing the neglect petition after adjudicating the children as neglected minors, the trial court failed to comply with the requirements of the Act and its discharge order was therefore ineffectual.  Specifically, it argues that the trial court erred in failing to conclude the permanency hearing and to: (1) consider the factors mandated in section 2-28(2) of the Act (705 ILCS 405/2-28(2) (West 2018); (2) provide written factual findings pursuant to section 2-31(2) of the Act (705 ILCS 405/2-31(2) (West 2018)) and (3) take into account the factors mandated in section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) (West 2018)).  DCFS

also raises several other miscellaneous issues. We will address each claim individually, but first we will address the standard of review.

¶ 31                                    A. Standard of Review

¶ 32    Generally, when the issue on appeal involves how the trial court weighed the facts in a termination of wardship case the manifest-weight-of-the-evidence standard of review is employed. *In re Bettie Jo R.*, 277 Ill. App. 3d 401, 405 (1995). However, whether a trial court failed to follow the requirements of a statute presents a question of law, we will review the case on a *de novo* basis. *In re Vincente G.*, 408 Ill. App. 3d 678, 682 (2011). In this case, we are being asked to determine whether the trial court erred as a matter of law when it allegedly failed to follow specific requirements of the Act. Therefore, we agree with DCFS that the proper standard of review in this appeal is *de novo*.

¶ 33                                    B. Section 2-28(2) of the Act

¶ 34    DCFS argues that in order to comply with section 2-28(2) of the Act, the trial court must determine the future status of the child at a permanency hearing and select one of eight enumerated permanency goals. 705 ILCS 405/2-28(2) (West 2018). It notes that it specifically requested that the trial court change the goal from return home to adoption, but that the trial court did not do so. Instead, the trial court adopted the State's rationale that the neglect petition should be dismissed because it believed there were two viable sets of potential adoptive parents for the children.

¶ 35    The version of section 2-28(2) of the Act that was effective at the time of the hearings below provided that at the permanency hearing, the court shall determine the future status of the child by setting one of the following permanency goals:

         "(A) The minor will be returned home by a specific date within 5 months.

(B) The minor will be in short-term care with a continued goal to return home within a period not to exceed one year, where the progress of the parent or parents is substantial giving particular consideration to the age and individual needs of the minor.

(B-1) The minor will be in short-term care with a continued goal to return home pending a status hearing. When the court finds that a parent has not made reasonable efforts or reasonable progress to date, the court shall identify what actions the parent and the Department must take in order to justify a finding of reasonable efforts or reasonable progress and shall set a status hearing to be held not earlier than 9 months from the date of adjudication nor later than 11 months from the date of adjudication during which the parent's progress will again be reviewed.

(C) The minor will be in substitute care pending court determination on termination of parental rights.

(D) Adoption, provided that parental rights have been terminated or relinquished.

(E) The guardianship of the minor will be transferred to an individual or couple on a permanent basis provided that goals (A) through (D) have been ruled out.

(F) The minor over age 15 will be in substitute care pending independence. In selecting this permanency goal, the Department of Children and Family Services may provide services to enable reunification and to strengthen the minor's connections with family, fictive kin, and other responsible adults, provided the services are in the minor's best interest. The services shall be documented in the service plan.

(G) The minor will be in substitute care because he or she cannot be provided for in a home environment due to developmental disabilities or mental illness or because he or

she is a danger to self or others, provided that goals (A) through (D) have been ruled out."

705 ILCS 405/2-28(2) (West 2018).

¶ 36    We find DCFS' argument to be without merit. None of the factors listed in section 2-28(2) of the Act apply to the instant case. The first three factors do not apply because a return home goal is not feasible since the children's parents are both deceased. The fourth factor, substitute care pending a determination on termination of parental rights, would be illogical if applied to this case. DCFS can point to no authority that provides for the termination of an individual's parental rights after they have died. The reason it cannot do so is that such a procedure would be a total waste of judicial time and resources. The next factor, "(D) Adoption, provided that parental rights have been terminated or relinquished." Here, the children's parental rights were not terminated, nor did the parents relinquish them, so this factor does not apply.

¶ 37    Factor "(E) The guardianship of the minor will be transferred to an individual or a couple on a permanent basis provided that goals (A) through (D) have been ruled out," presents us with our first problem. Technically, the trial court could have applied factor E here and transferred guardianship of the children to the grandparents on a permanent basis. However, doing so would have turned a blind eye to the fact that there were another set of relatives who wanted to adopt the children, their aunt and uncle*, and those relatives could not intervene or otherwise be heard in the neglect proceedings*. The Act provides that "[t]he court may grant standing to any foster parent if the court finds that it is in the best interest of the child for the foster parent to have standing and intervenor status." 705 ILCS 405/1-5(2)(d) (West 2018). Here, the grandparents were selected by DCFS to be the foster parents, so the aunt and uncle had no way to access these proceeding and voice their desire to adopt the children.

¶ 38    We agree with DCFS that the last two factors, F and G, are not applicable to this case. For all these reasons, we find that the trial court did not err by not choosing a permanency goal when none of the statutory factors applied to the facts of this case.

¶ 39                                    C. Sections 2-31(2)

¶ 40    DCFS next claims that the trial court erred in failing to make any written findings as to why it was in the children's best interests to grant the State's motion to withdraw the neglect petitions as required by section 2-31(2) of the Act. 705 ILCS 405/2-31(2) (West 2018).

¶ 41    Section 2-31(2) of the Act provides that when the court determines, and makes written factual findings, that the health, safety, and the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under the Act respecting the minor shall be finally closed and discharged. It also provides that the trial court may at the same time continue or terminate any custodianship or guardianship theretofore ordered but the termination must be made in compliance with Section 2-28. 705 ILCS 405/2-31(2) (West 2018).

¶ 42    As for section 2-31(2)'s requirement that the trial court make written findings that the health, safety and best interests of the children no longer require that they be wards of the court (705 ILCS 405/2-31(2) (West 2018)), we agree with DCFS that such written findings were not made. However, DCFS has forfeited this claim because it failed to object to the lack of written findings in the court's order in the proceedings below. See *In re K.S.*, 317 Ill. App. 3d 830, 833 (2000). Also, even if we ignored DCFS' forfeiture here, we find that the court's oral ruling was sufficient to put DCFS on notice of the court's decision. See *In re Madison H.*, 215 Ill. 2d 364, 377 (2005) (an oral finding on the record, once transcribed, may satisfy the writing requirement of

section 2-27(1) of the Act "provided that it is explicit and advises the parties of the basis for the court's decision.")

¶ 43    Here, we know why the trial court believed that it was in the children's best interests to grant the State's motion to withdraw the neglect petition because its findings are contained in the report of proceedings. Specifically, after commenting about how sad the circumstances here were with the children's parents being deceased, the trial court said:

> "There are two sets of individuals represented by counsel that have stepped forward indicating they wish to provide a permanent home for these children. There are financial issues associated with what assets may remain that would be for the benefit of these children. I think a probate court is well suited to address those issues on behalf of those competing parties. If you will, as well as [to] look out for the best interests of the children."

¶ 44    Here, the trial court wanted both the children's paternal grandparents and their maternal aunt and uncle to be "vetted" to see which couple would make the best adoptive parents. At the same time, there were financial issues that needed to be worked out with the parents' estates. As we have noted, the maternal aunt and uncle could not intervene in the juvenile proceeding. Therefore, the trial court properly chose to grant the State's motion to dismiss the neglect petitions and have the issue of adoption and finances determined by one judge, the probate judge. That determination was in accordance with Supreme Court Rule 903 (eff. March 8, 2016), which "encourages the assignment of all custody and allocation of parental responsibilities proceedings concerning a child to a single judge."

¶ 45                        D. Section 1-3(4.05) of the Act

¶ 46    Next, DCFS claims that the trial court erred in failing to consider the factors in section 1-3(4.05) of the Act when it found that it was in the children's best interests to grant the State's motion to dismiss the neglect petition.

¶ 47    Section 1-3(4.05) of the Act provides that whenever a best interests determination is required, the following factors shall be considered based upon child's age and developmental needs:

> (i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);
>
> (ii) the child's sense of security;
>
> (iii) the child's sense of familiarity;
>
> (iv) continuity of affection for the child;
>
> (v) the least disruptive placement alternative for the child;
>
> (e) the child's wishes and long-term goals;
>
> (f) the child's community ties, including church, school, and friends;
>
> (g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;
>
> (h) the uniqueness of every family and child;
>
> (i) the risks attendant to entering and being in substitute care; and
>
> (j) the preferences of the persons available to care for the child."

705 ILCS 405/1-3(4.05) (West 2018).

¶ 48    We are not persuaded by DCFS' argument. Although it does not explicitly say so, implied in DCFS' argument is that these factors weighed in favor of the paternal grandparents because they

had been the children's foster parents since 2018. However, once again, that turns a blind eye toward the fact that there is another couple, also relatives of the children, who also want to adopt the children. Without giving the maternal aunt and uncle a right to visit with the children and establish a more permanent relationship with them we cannot say which factors favors which couple. Again, we note that the maternal aunt and uncle were not legally able to intervene in the juvenile proceedings. For these reasons, we find no error.

¶ 49                                    E. Miscellaneous Issues

¶ 50    In its brief DCFS raises several smaller issues by way of a few sentences or a paragraph, and then moves on to another issue. We will address these issues as well.

¶ 51                                  1. The Children's Medical Treatment

¶ 52    DCFS claims that the trial court erred in terminating its guardianship over the children because doing so meant terminating services to the family, and that left the children with no one who had authority to consent to their medical treatment.

¶ 53    First, this claim assumes that the probate judge, who within minutes after the juvenile court judge granted the State's motion to dismiss, did not appoint a guardian for the children and give that guardian the power to make medical decisions for them. Second, the juvenile court judge responded to DCFS' concern about the children's medical treatment below and noted that the Attorney General could request that the guardianship order be made more explicit regarding medical treatment. Finally, and most important, we have no jurisdiction to determine the correctness of the probate judge's actions below. Accordingly, this claim is without merit.

¶ 54                                    2. Section 1-5 of the Act

¶ 55    Next, DCFS argues that the outcome of this case was inconsistent with section 1-5 of the Act, which provides the minor, parents, guardian, legal custodian and other parties with the right

to be present and to be heard, submit evidence, and cross-examine witnesses during proceedings under the Act. 705 ILCS 405/1-5 (West 2018).

¶ 56     DCFS does not allege *how* the trial court violated this section of the Act or cite to the pages of the record as support for this contention. Therefore, this claim violates Illinois Supreme Court Rule 341(h)(7) (eff. March 25, 2018) (the argument section of appellant's brief shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on). Accordingly, this issue has been forfeited. See *CE Design, Ltd. V. Speedway Crane, LLC*, 2015 IL App (1st) 132572, ¶ 18 ("[t]he failure to provide an argument and to cite to facts and authority, in violation of Rule 341, results in the party forfeiting consideration of the issue.").

¶ 57                                  3. *In re Vincente G.*

¶ 58     Next, DCFS contends that the act of dismissing the neglect petition rather than concluding the permanency hearing was a *de facto* "return home," which was inappropriate where there was no home to which the children could be returned. As support for this claim it cites to *In re Vincente G.*, 408 Ill. App. 3d 678 (2011).

¶ 59     In *In re Vincente G.*, the parents were adjudicated unfit, but before the conclusion of the permanency proceedings, the mother disappeared with the children. The court issued child protection warrants, the mother was held in indirect civil contempt of court and a bench warrant was issued for her arrest. *Id.* at 680. Three years later the children had not been found and DCFS moved to terminate the guardianship of the minors. The trial court granted the motion. The appellate court reversed. It found that at the time the trial court granted DCFS' motion, the mother had violated the court's orders relating to visitation and had taken physical custody of the children, which placed them in the same neglectful situation they had been in the beginning of the

proceedings. It also found that the closing of the case deprived the children of the protective orders that had been entered. *Id.* at 683. The appellate court also found that rather than consider the children's best interests, the court focused on the practicalities of keeping the case open in the absence of the mother and the children. *Id.* In doing so, the trial court violated section 2-31(2) of the Act. The termination of warship and guardianship resulted in "the *de facto* return of the minors' custody to [the mother]" and it did not hold a hearing, order an investigation or make the necessary finding that the mother was fit to care for the minors pursuant to section 2-28(4) of the Act. *Id.* at 684.

¶ 60    DCFS argues that like in *Vincente G.*, the trial court here was more concerned with the practicalities outside the reach of the Act, such as whether the children might inherit property from their parents.

¶ 61    We fail to see how *In re Vincente G*. aids DCFS' case. First, the *Vincente G.* court *did not* say that the terminating the proceedings was a *de facto* "return home," as DCFS alleges. It said that it would be a *de facto return of the children to the mother's custody*. Here, that outcome could not happen because both parents are deceased. Second, after their mother kidnapped them, the children in *Vincente G.* were in the same neglectful environment as in the beginning of those proceedings. In the instant case, however, the children were found to be neglected because of their father's drug use. That neglect ceased to exist after he died. Finally, unlike in *Vincente G.*, the trial court here made findings as to why it was in the children's best interests to grant the State's motion. We disagree that those findings were only about "practicalities outside the reach of the Act" as DCFS alleges. Those "practicalities" were in conformance with Supreme Court Rule 903 (eff. March 8, 2016) and they served the children's best interests because it gave the probate court

two separate groups of relatives to investigate and determine which ones were the best fit as the children's adoptive parents.

¶ 62                                          4. CASA's Motion to Dismiss

¶ 63    DCFS next contends that CASA's motion to dismiss was improper because it was brought under section 2-615 of the Code. 735 ILCS 5/2-615 (West 2018). Having found that the trial court properly granted the State's motion to dismiss the neglect petition we need not address this issue.

¶ 64                                   5. State's Discretion to Withdraw Petition

¶ 65    Finally, DCFS argues that the State lacked the unilateral discretion to withdraw the neglect petition. It acknowledges that the trial court appeared to accept the fact that the State lacked the absolute right to withdraw the petition, but that it erred anyway when it said that it could stand in the shoes of the State and withdraw the case. DCFS claims that this is another example of the trial court not making its decision based upon the best interest of the children.

¶ 66    We are not persuaded. For all the reasons previously noted, the trial court properly considered the best interests of the children when it granted the State's motion to dismiss the neglect petition.

¶ 67                                          III. CONCLUSION

¶ 68    In sum, the trial court properly granted the State's motion to dismiss the neglect proceedings here when the children's parents were both deceased and the trial court found that it was in the children's best interests for the probate court to determine whether the maternal aunt and uncle or the paternal grandparents were best suited to be the children's adoptive parents.

¶ 69    For the following reasons, the judgment of the circuit court of De Kalb County is affirmed.

¶ 70    Affirmed.